389 A.2d 101

COMMONWEALTH of Pennsylvania

v.

Edward J. HOLZER, Jr., Appellant (two cases).

Supreme Court of Pennsylvania.

Argued April 14, 1978.

Decided July 27, 1978.

Richard D. Winters, Norristown, for appellant.

Kenneth G. Biehn, Dist. Atty., Peter F. Schenck, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

Appellant, Edward Holzer, was convicted in a jury trial of first degree murder, robbery and conspiracy and sentenced to life imprisonment. He is now appealing the judgments of sentence.

While appellant does not raise the issue of sufficiency of the evidence to convict, the Supreme Court has an independent obligation to determine if the evidence is suffi-' cient to support a verdict of murder in the first degree. Act of February 15, 1870, P.L. 15 § 2, 19 P.S. § 1187 (1964). The test to be applied in reviewing the conviction of first degree murder is whether, viewing all of the evidence at trial in the light most favorable to the Commonwealth, the verdict winner, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282, 285–86 (1976). Further, while it is clear that a criminal conviction may not be based upon mere speculation or conjecture, evidence may still be found sufficient even though wholly circumstantial. *Commonwealth v. Thomas*, 465 Pa. 442, 350 A.2d 847, 849 (1976).

Murder of the first degree is a criminal homicide committed by an intentional killing. Act of March 26, 1974, P.L. 213, No. 46, § 4(a), 18 P.C.S. § 2502(a) (Supp.1977–78). Specific intent to kill is the element which distinguishes murder of the first degree from the lesser grades of murder. *Commonwealth v. Moore*, 473 Pa. 169, 373 A.2d 1101, 1104 (1977). Moreover, specific intent to kill may be inferred from the use of a deadly weapon directed at a vital organ of the victim. *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976).

A review of the evidence adduced at trial, read in the light most favorable to the Commonwealth, reveals the following. The body of Earl D'Aras was found, on the evening of March 26, 1975 at approximately 5 p. m., in a sporting goods

store in Lower Southampton Township, Bucks County. He had last been seen alive at 4:20 p. m., possibly as late as 4:50 p. m. The victim died as a result of multiple injuries—his skull had been fractured, his throat had been slit five times severing the jugular vein and a hunting knife with a seven-inch blade had been thrust to the hilt into his back, penetrating the heart.

The store had been ransacked. The cash register drawer had been opened and a sum of approximately $200.00 was missing; the gun case had been broken open and eight handguns removed; the knife case had been smashed and one knife of the type which pierced D'Aras' back was missing; and the ammunition case had been found in a condition of disarray (although it could not be determined with certainty if any ammunition had been taken).

A witness, Jean Hendy, observed appellant and a younger boy in the parking lot of the shopping center in which the store is located, at approximately 4:50 p. m. the day of the murder, standing near a blue Volkswagen. She noted the license number on a slip of paper. Appellant and the other boy walked around the corner of the building to the front of the shopping center in the direction of the sporting goods store. The younger boy returned by himself, followed shortly by appellant. They then drove the car away.

The license number of the Volkswagen was traced through the Bureau of Motor Vehicles which indicated that the registered owner was one Agnes Kearney, the stepmother of the appellant. A search of the vehicle, pursuant to a search warrant, turned up a .22 caliber bullet of the same type and manufacture as that sold at the sporting goods store. The console and armrest of the vehicle were stained with blood, but it was not possible to determine the blood type. Search of appellant's residence produced two brown gloves stained with blood; again no blood typing was possible. The search of the residence also revealed a white glove

which was stained with group B blood.  The victim likewise had group B blood.[1]

Certain human hairs were also found on the gloves which were analyzed and compared to the victim's hairs by Agent Deadman of the Federal Bureau of Investigation.  Agent Deadman testified that, in his opinion, the hairs found on the gloves were that of the victim.  The agent also testified that, upon analysis and comparison, certain textile fibers found on the gloves exhibited the same microscopic characteristics as fibers of the sweater worn by D'Aras on the day of his death and that the fibers on the gloves could have come from that sweater.

Furthermore, there was evidence that the defendant was in need of money on the day of the murder to produce bail to have his father released from jail, that he had no money earlier in the day and that, later on that evening, he appeared with $203.00 for the purpose of effecting his father's release.

On the basis of the foregoing, we find sufficient evidence to support the conviction of first degree murder.

Appellant raises several issues in this appeal that were included in his written post-verdict motions containing 107 assertions of error.  However, at argument on the motions before a court en banc, he briefed and argued only five.  In its opinion dismissing the post-verdict motions, the court noted that counsel "stated that he was not waiving the other 102 assignments of error but we will not purport or attempt to address ourselves to them in the absence of the aid of counsel in the form of brief or oral argument."  The court en banc's refusal to consider the issues *neither* briefed *nor* orally argued was proper.

While appellant complied with the mandate of *Commonwealth v. Blair*, 463 Pa. 383, 344 A.2d 884 (1975) (issues not included in written post-verdict motions are deemed waived), his failure to either brief or orally argue 102 issues

1.  There was testimony at trial that approximately ten percent of the population in the United States has group B blood.

has deprived the court en banc of any meaningful opportunity to consider them. Consequently, this Court has been deprived of the benefit of the lower court's analysis and resolution of those issues, review of which would frustrate the policies underlying *Blair.*

■ "The logical corollary of the [waiver] rules . . . is the requirement that counsel either brief or [orally] argue the points of error raised in the written post-trial motions." *Commonwealth v. Williams,* 476 Pa. 557, 383 A.2d 503, 509 n.11 (1978). Therefore, those assignments of error not briefed or argued have been waived and will not be reviewed on appeal. We now turn our attention to those issues which are properly before us.[2]

Appellant contends that the trial judge erred in failing to suppress the armrest, console and bullet as the fruits of an illegal search of the Volkswagen. Appellant was arrested at 12:01 a. m., March 28, 1975, in front of his girlfriend's residence in Philadelphia. Sometime that morning, appellant's car was found in the street near his parents' residence where he was staying at the time and impounded by the Philadelphia police department. Bucks County detectives transported the car from Philadelphia to Lower Southampton Township at approximately 9:30 a. m. At 3 p. m., the afternoon of the same day, a search warrant was issued, upon probable cause, by Bucks County District Justice Dorothy Pollock.[3] The car was then searched and the items now

**2.** We have found the following to be without merit and are such that no discussion is necessary:

(a) the court erred in denying the appellant's request for continuance of the trial;

(b) the court erred in dismissing without a hearing a pretrial application to suppress identification testimony;

(c) the court erred in permitting amendment of the transcribed notes of testimony;

(d) the court erred in failing to dismiss the entire panel of jurors or, alternatively, to conduct a hearing to determine if members of the panel had seen a newspaper story concerning appellant and if they had seen appellant in handcuffs prior to trial; and,

(e) appellant was denied effective assistance of counsel at trial.

**3.** Appellant does not contend that probable cause was lacking for the issuance of the search warrant.

alleged to be fruits of an illegal search were found. At no time prior to the issuance of the search warrant was the interior of the car searched.

Appellant's argument is, essentially, that the impoundment of the Volkswagen by Philadelphia police and transportation of it to Bucks County prior to issuance of a warrant was a warrantless seizure in violation of his constitutional guarantees of security against unreasonable searches and seizures.[4]  We do not agree.

As a general rule, a search or seizure without a warrant is deemed unreasonable for constitutional purposes. *Coolidge v. New Hampshire*, 403 U.S. 443, 454, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).  The warrant requirement, however, is excused where exigent circumstances exist.  *Id.*  Exceptions arise where the need for prompt police action is imperative, either because evidence sought to be preserved is likely to be destroyed or secreted from investigation, or because the officer must protect himself from danger to his person by checking for concealed weapons.[5]  Exceptions also arise where the warrantless search or seizure by a police officer does not amount to a significant invasion of a defendant's reasonable expectations of privacy.[6]  These exceptions reflect practical compromises between the interests of the state in effective law enforcement and the privacy interests of its citizens.

4.  The constitutional guarantees are contained in Article 1, Section 8 of the Pennsylvania Constitution and the Fourth and Fifteenth Amendments to the United States Constitution.

5.  Recognized exceptions in this category include hot pursuit, emergency situation, incident to lawful arrest and stop and frisk.  *South Dakota v. Opperman*, 428 U.S. 364, 382 n.10, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976);  *Warrantless Searches and the "Plain View" Doctrine: Current Perspective*, Lewis, P. and Mannle, H., 12 Crim.L. Bull. 5, 6 (1976).

6.  Protection of reasonable expectations of privacy is the primary purpose of the prohibition against unreasonable searches and seizures.  *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967);  *Commonwealth v. Mangini*, 478 Pa. 147, 156, 386 A.2d 482 (1978).  Exceptions falling within this category include consent, abandoned property, plain view and actions of private citizens.  *See* authority cited note 4, *supra*.

It is clear that there is no "automobile exception" as such and that constitutional protections are applicable to searches and seizures of a person's car. *Coolidge v. New Hampshire*, 403 U.S. 443, 479–80, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Yet, in considering the reasonableness of a given search or seizure of an automobile, the need for a warrant is often excused by exigent circumstances. The reasons are two-fold. First, a vehicle is highly mobile and the likelihood is therefore great that it and its contents may never be found if police were prohibited from immobilizing it until a warrant can be secured. *Commonwealth v. Smith*, 452 Pa. 1, 7, 304 A.2d 456, 459 (1973), quoting *Chambers v. Maroney*, 399 U.S. 42, 57, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

Second, one's expectation of privacy with respect to an automobile is *significantly* less than that relating to one's home or office. *Commonwealth v. Mangini*, 478 Pa. 147, 386 A.2d 482 (1978), quoting *South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). And, where a warrantless seizure of the automobile follows arrest of its owner or driver, the intrusion into that person's privacy interest is even less offensive; since the person is to be taken into custody, he or she will suffer minimal further inconvenience from the temporary immobilization of the vehicle. *Chambers v. Maroney, supra*, 399 U.S. at 63, 90 S.Ct. 1975 (Harlan, J., concurring and dissenting opinion). Further, where the alleged illegal activity does not invade the interior of the car, the chances are even greater that no expectation of privacy has been infringed. *Commonwealth v. Mangini, supra* 478 Pa. at 156–57, 386 A.2d at 486–87.

It is reasonable, therefore, for constitutional purposes, for police to seize and hold a car until a search warrant can be obtained, where the seizure occurs after the user or owner has been placed into custody, where the vehicle is located on public property,[7] and where there exists probable cause to believe that evidence of the commission of

7. Where the vehicle is located on the defendant's private property (garage or driveway), it becomes more difficult, although not impossible, to find the police conduct reasonable, since there has been a greater infringement upon defendant's expectations of privacy.

a crime will be obtained from the vehicle. *Cardwell v. Lewis*, 417 U.S. 583, 593–94, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); *Chambers v. Maroney, supra* 399 U.S. at 52, 90 S.Ct. 1975. In the present case, the conduct of the Philadelphia and Bucks County police was reasonable. Appellant was arrested and, shortly thereafter, the car which was used in the commission of the crime according to the eyewitness was located on a public street. Appellant's alleged co-conspirator (the younger boy seen with appellant at the parking lot near the store) was still at large and his family and girlfriend lived in the vicinity in which the Volkswagen was found. Thus, the car could easily have been removed from the area and its evidence lost. And, no search of the car's interior was made until a search warrant had been obtained from a neutral and detached magistrate upon a showing of probable cause. The warrantless seizure of the automobile was proper, as was the trial court's denial of the motion to suppress.

Appellant next submits that the lower court erred in denying his request for a continuance of the pre-trial suppression hearing in order to allow him an opportunity to acquire private counsel. On April 7, 1975, Stephen La Hoda, Esquire, an Assistant Public Defender, was appointed to represent appellant. Mr. La Hoda presented an application to suppress all of the evidence seized pursuant to the search warrants issued in the case, including the evidence located in the Volkswagen. At the suppression hearing, appellant expressed dissatisfaction with the public defender and indicated that he desired a continuance to give him an opportunity to retain private counsel. Mr. La Hoda also advised the court he knew that "Mr. Holzer has mistrusted me from the beginning and that he has had a preference of having other counsel". Appellant's father appeared at this hearing and testified that he had saved approximately $2,000.00, was

*Coolidge v. New Hampshire, supra* 403 U.S. at 463 n.20, 91 S.Ct. 2022, n.20. This was, in fact, the ground upon which the *Coolidge* plurality opinion distinguished *Chambers v. Maroney, supra* wherein warrantless seizure of a car from a public place following arrest of the driver was upheld. *Cardwell v. Lewis, supra* 417 U.S. at 593, 94 S.Ct. 2464.

earning $96.00 per day, was in contact with several attorneys and expected to secure the services of one of them within a month. In fact, just two days after the suppression hearing on May 21, 1975, the efforts to retain private counsel had met with success, as Mr. La Hoda withdrew from the case and Lee Mandell, Esquire, entered his appearance for appellant.

There is no doubt that the right to counsel applies to all "critical stages" of a criminal proceeding. *Commonwealth v. Ritchey*, 431 Pa. 269, 272, 245 A.2d 446, 448 (1968); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). A critical stage is a point in the proceeding at which substantive rights may be preserved or lost. *Commonwealth v. Ritchey, supra.* There is no doubt that a suppression hearing is a critical stage since, if the suppression court determines that evidence is admissible, that determination is final, conclusive and binding at trial (except that a defendant may challenge the admission of the evidence at trial upon grounds *other than* its suppressibility). Pa.R.Crim.P. 323(j). The right to counsel includes not only the right to have counsel appointed when the defendant is indigent, but also the right of an accused to a reasonable opportunity to secure private counsel of his own choosing. *Crooker v. California*, 357 U.S. 433, 439, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958); *Pirillo v. Takiff*, 462 Pa. 511, 341 A.2d 896, 900 (1975).

As the Commonwealth would not have been prejudiced in the instant case by the granting of the continuance, appellant was erroneously denied his right to counsel of his own choosing.[8]

The denial does not, however, require reversal. Reversal and new trial is warranted only where the denial of the right to counsel of choice at a pre-trial proceeding so

8. When appellant requested the one month continuance, less than two months had passed since his arrest. The Commonwealth would not, therefore, have been in any appreciable danger of violating appellant's guarantee of a speedy trial. Also, no claim was made that witnesses or evidence would be lost if the continuance was granted.

prejudices the accused as to infect the subsequent trial with an absence of fundamental fairness. *Crooker v. California, supra.* Where the error is harmless beyond a reasonable doubt, we need not reverse the conviction. *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155, 162 (1978).

At the suppression hearing, the Assistant Public Defender succeeded in suppressing a severely damaging item—a full confession of appellant. The only other evidence for which a non-frivolous argument for suppression could have been made was the "fruits" of the search of the Volkswagen. As we have seen, the evidence gathered from the car was not illegally obtained and, hence, was not suppressible. Moreover, the other evidence against appellant was sufficient in and of itself to support a verdict of guilty beyond a reasonable doubt. The trial judge's error was, therefore, harmless.

Judgments of sentence affirmed.

MANDERINO, J., did not participate in the consideration or decision of this case.

ROBERTS, J., filed a concurring opinion.

NIX, J., filed a dissenting opinion.

ROBERTS, Justice, concurring.

Although I concur in the result, I must point out that the majority has misstated the definition of murder of the first degree. The majority states that specific intent is the element which distinguishes murder of the first degree from lesser degrees of murder. Rather, to amount to murder of the first degree, a killing must also be "willful, deliberate and premeditated." 18 Pa.C.S.A. § 2502(d) (Supp.1978); *Commonwealth v. Moore,* 473 Pa. 169, 373 A.2d 1101 (1977) (Roberts, J., joined by Manderino, J., concurring); *Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976) (Manderino, J., joined by Roberts, J., dissenting) (quoting Lafave & Scott, Criminal Law 563–64 (1972)). Because sufficient evidence exists to support a finding that appellant committed a "willful, deliberate and premeditated" killing, I would affirm the judgment of sentence.

NIX, Justice, dissenting.

The majority has determined that in spite of the lower court error in denying appellant's request for a continuance in order to allow him an opportunity to retain private counsel of his own choice, appellant is not entitled to relief. The majority found that appellant's attempt to exercise his constitutional right to counsel of his choice was timely and was not a dilatory tactic. Thus it was concluded that appellant's right to select counsel of his choice had indeed been violated. In view of this holding, I cannot accept the majority's subsequent conclusion that the denial of appellant's right to counsel was harmless error. Implicitly the majority reasons that because the counsel who actually represented appellant performed competently, the denial of appellant's right to counsel of his choice could not have contributed to the verdict and, therefore, was harmless error. *See Commonwealth v. Story*, 476 Pa. 391, 409, 383 A.2d 155, 164 (1978). In my view, such reasoning rests upon a purely speculative comparison between actual counsel's performance and the majority's conjecture as to how an attorney chosen by appellant might have proceeded in handling appellant's case. More importantly, such an application of the harmless error doctrine would render nugatory the right to counsel of one's choice. I therefore dissent.