547 A.2d 768

**COMMONWEALTH of Pennsylvania**

v.

**Stephen Allen CONN, Appellant.**

Superior Court of Pennsylvania.

Argued June 14, 1988.

Filed Sept. 9, 1988.

John R. Gailey, Jr., York, for appellant.

Mark A. Bellavia, Assistant District Attorney, York, for Com., appellee.

Before CIRILLO, President Judge, and WIEAND and DEL SOLE, JJ.

WIEAND, Judge:

Stephen Allen Conn was tried nonjury and was found guilty of possession of a controlled substance with intent to

deliver.[1]   Post-trial motions were denied, and Conn was sentenced to serve a term of imprisonment for not less than eight months nor more than twenty months.   On direct appeal, he argues that evidence obtained as a result of a warrantless entry of his home by police should have been suppressed.   It should have been suppressed, he argues, because there were not exigent circumstances sufficient to excuse the police from obtaining a warrant and because the police failed to comply with the "knock and announce" rule before entering.   Because we conclude that Conn's Fourth Amendment right to be free from unreasonable searches and seizures was violated in this case, we reverse and remand for a new trial.

On November 27, 1985, Troopers Lokhaiser and Daryman were engaged in the surveillance of a vehicle owned by Adalberto and Gloria Rodriguez, which had been parked outside appellant's trailer-home in Jackson Township, York County.   The State Police had been given information by two confidential informants that the Rodriguezes would be delivering drugs to appellant's residence.   While the Rodriguezes were inside appellant's home, Trooper Daryman went to the nearby office of a district justice in order to meet with and to obtain the assistance of local police.   At the district justice's office, Sergeant Brown, of the Jackson Township Police Department, told Trooper Daryman that on a visit to appellant's home about a year earlier, he had observed a police scanner in the living room.   Thereafter, Trooper Daryman and Sergeant Brown returned to the location of appellant's home and joined Trooper Lokhaiser in the continuing surveillance of appellant's residence.   When the Rodriguezes departed, the three policemen followed. After the Rodriguez vehicle had travelled about a mile and a half, it was stopped and searched.   Police found in the vehicle a quantity of cocaine and cash in the amount of fifteen hundred ($1,500) dollars.   At this point, Sergeant Brown suggested to Lokhaiser for the first time the possi-

1. Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 13, as amended, 35 P.S. § 780–113(a)(30).

bility that appellant had a police scanner in his home. Fearing that appellant might have intercepted police radio transmissions which contained information about the stopping of the Rodriguez vehicle and would attempt to destroy other contraband, the police proceeded immediately to appellant's residence. There they knocked on the door, announced their presence, and immediately entered through an unlocked door without waiting for a response to their knock. Once inside, the police observed appellant in the process of cutting and bagging cocaine. Appellant was arrested immediately and advised of his *Miranda* rights. A search warrant was thereafter obtained from the district justice. Appellant, faced with the search of his home, waived his rights and told the police that he had purchased an ounce of cocaine from the Rodriguezes, from whom he had been buying drugs for several months.

A pre-trial motion to suppress the evidence seized by the police was heard and denied; and the evidence was used by the Commonwealth at appellant's trial.

The law with respect to warrantless searches and seizures has been stated by this Court as follows:

"[a]s a general rule a search or seizure without a warrant is deemed unreasonable for constitutional purposes. *Coolidge v. New Hampshire,* 403 U.S. 443, 454, 91 S.Ct. 2022 [2031], 29 L.Ed.2d 564." *Commonwealth v. Holzer,* 480 Pa. 93, 102, 389 A.2d 101 (1978). However, the realities and practicalities of law enforcement dictate that where exigent circumstances exist, the warrant requirement is excused. *United States v. Velasquez,* 626 F.2d 314 (3rd Cir.1980); *Holzer, supra.* Exigent circumstances arise where the need for prompt police action is imperative, either because evidence is likely to be destroyed, *id.,* or because there exists a threat of physical harm to police officers or other innocent individuals. *Velasquez, supra.*

*Commonwealth v. Hinkson,* 315 Pa.Super. 23, 27, 461 A.2d 616, 618 (1983). See also: *Commonwealth v. Chandler,* 505 Pa. 113, 477 A.2d 851 (1984); *Commonwealth v. Silo,*

480 Pa. 15, 389 A.2d 62 (1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1053, 59 L.Ed.2d 94 (1979); *Commonwealth v. Cockfield,* 431 Pa. 639, 246 A.2d 381 (1968); *Common-wealth v. Ehrsam,* 355 Pa.Super. 40, 512 A.2d 1199 (1986). It is clear, however, that rules governing police action without a warrant will be narrowly interpreted in cases involving a person's home. In this regard, the United States Supreme Court has said:

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms.... In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

*Payton v. New York,* 445 U.S. 573, 589–590, 100 S.Ct. 1371, 1381, 63 L.Ed.2d 639, 653 (1980), quoted in *United States v. Velasquez,* 626 F.2d 314, 317 (3d Cir.1980). Cf. *Commonwealth v. Flewellen,* 475 Pa. 442, 446, 380 A.2d 1217, 1220 (1977) ("Upon closing the door of one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society."); *Commonwealth v. Schaeffer,* 370 Pa.Super. 179, 209, 536 A.2d 354, 369 (1987) (same).

Terms like "exigent circumstances" or "urgent need" are useful in underscoring the heavy burden on the police to show that there was a need that could not brook the delay incident to obtaining a warrant, and that it is only in the light of those circumstances and that need that the warrantless search meets the ultimate test of avoiding condemnation under the Fourth Amendment as "unreasonable."

*Dorman v. United States,* 140 U.S.App.D.C. 313, 320, 435 F.2d 385, 392 (1970) (en banc). See: *Commonwealth v. Williams,* 483 Pa. 293, 298, 396 A.2d 1177, 1179 (1978), *cert.*

*denied,* 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980). See also: *United States v. Blasco,* 702 F.2d 1315, 1325 (11th Cir.1983), *cert. denied,* 464 U.S. 914, 104 S.Ct. 275, 78 L.Ed.2d 256 (1983) (exigent circumstances exist where societal costs, such as danger to police or risk that evidence will be destroyed, outweigh reasons for prior recourse to a magistrate); *United States v. Flickinger,* 573 F.2d 1349, 1355 (9th Cir.1978), *cert. denied,* 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978), *overruled on other grounds, United States v. McConney,* 728 F.2d 1195 (9th Cir.1984) ("The term 'exigent circumstances' . . . refers to a situation where the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action."). "All decisions made pursuant to the exigent circumstances exception [to the warrant requirement] must be made cautiously, for it is an exception which by its nature can very easily swallow the rule unless applied in only restricted circumstances." *Commonwealth v. Daniels,* 280 Pa.Super. 278, 286, 421 A.2d 721, 725 (1980). This Court has further said that:

> [a]n inquiry to determine whether exigent circumstances exist involves a balancing of the individual's right to be free from unreasonable intrusions against the interest of society in investigating crime quickly and adequately and preventing the disappearance of evidence necessary to convict criminals. *United States v. Rubin,* 474 F.2d 262 (3rd Cir.1973), *cert. denied* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973); *United States v. Hayes,* 518 F.2d 675 (6th Cir.1975). It requires an examination of all of the surrounding circumstances in a particular case, *Commonwealth v. Harris,* 429 Pa. 215, 239 A.2d 290 (1968). These circumstances will vary from case to case and the inherent necessities of the situation at the time must be scrutinized. *Rubin,* at 268.

*Commonwealth v. Hinkson, supra,* 315 Pa.Super. at 27–28, 461 A.2d at 618.

"[T]he possibility that evidence will be destroyed by defendants who have discovered government surveillance of

their activities often has been recognized as a sufficient exigency to justify warrantless entry." *United States v. Edwards*, 602 F.2d 458, 468 (1st Cir.1979). Cf. *United States v. Guidry*, 534 F.2d 1220 (6th Cir.1976) (exigent circumstances established where totality of circumstances disclosed that efforts to destroy evidence were in progress); *United States v. Blake*, 484 F.2d 50 (8th Cir.1973), *cert. denied*, 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974) (exigent circumstances exist where totality of circumstances reveal an imminent threat of destruction of evidence). The United States Court of Appeals for the Third Circuit, in *United States v. Rubin*, 474 F.2d 262 (3d Cir.1973), *cert. denied*, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973), formulated the following test to determine when a law enforcement officer's belief that evidence might be destroyed rises to the level of exigent circumstances:

When Government agents, however, have probable cause to believe contraband is present and, in addition, based on the surrounding circumstances or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified. The emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized. Circumstances which have seemed relevant to courts include (1) the degree of urgency involved and the amount of time necessary to obtain a warrant, compare *United States v. Pino*, 431 F.2d 1043, 1045 (2d Cir.1970), with *Niro v. United States*, 388 F.2d 535 (1st Cir.1968); (2) reasonable belief that the contraband is about to be removed, *United States v. Davis*, 461 F.2d 1026, 1029–1030 (3d Cir.1972); *Hailes v. United States*, 267 A.2d 363 (D.C.C.A.1970); (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought, *United States v. Pino*, 431 F.2d at 1045; (4) information indicating the possessors of the contraband are aware that the police are on their trail, *United States v. Doyle*, 456 F.2d 1246 (5th Cir.1972); and (5) the ready destructibility of the contra-

band and the knowledge "that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic," *United States v. Manning,* 448 F.2d 992, 998–999 (2d Cir.1971); *United States v. Davis,* 461 F.2d at 1031–1032.

*United States v. Rubin, supra* at 268–269. See generally: LaFave, Search and Seizure, Volume 2, § 6.5(b) (2nd ed. 1987). Accord: *Commonwealth v. Anderson,* 272 Pa.Super. 167, 414 A.2d 1060 (1979); *Commonwealth v. Phillips,* 244 Pa.Super. 42, 366 A.2d 306 (1976); *Commonwealth v. Tate,* 237 Pa.Super. 104, 346 A.2d 570 (1975). Another factor which must be considered is whether police have fully availed themselves of one or more earlier opportunities to obtain a warrant. LaFave, § 6.5(b) at 660–662. See, e.g.: *United States v. Collazo,* 732 F.2d 1200 (4th Cir.1984), *cert. denied,* 469 U.S. 1105, 105 S.Ct. 777, 83 L.Ed.2d 773 (1985); *United States v. Impink,* 728 F.2d 1228 (9th Cir. 1984); *Commonwealth v. Forde,* 2 Mass.App. 425, 313 N.E.2d 581 (1974), *aff'd,* 367 Mass. 798, 329 N.E.2d 717 (1975). But see: *United States v. Gardner,* 553 F.2d 946 (5th Cir.1977), *cert. denied,* 434 U.S. 1011, 98 S.Ct. 722, 54 L.Ed.2d 753 (1978).

In *United States v. Rubin, supra,* a suspect who had been under surveillance was arrested about six blocks from his home after his actions had suggested to federal agents that he was aware of the surveillance. Upon being arrested, the suspect shouted to bystanders, who appeared to be people who were known to him, to call his brother. At this time, efforts were already under way to obtain a warrant to search the suspect's house. Fearing that the brother might be warned of the suspect's arrest and that he would destroy evidence, however, the federal agents conducted an immediate warrantless search. The Court of Appeals found these circumstances sufficiently exigent to excuse the warrant requirement.

In the instant case, as in *Rubin,* the police feared that the arrest of other persons, the Rodriguezes, would become known to appellant and that, as a result thereof,

appellant would be able to destroy evidence before a search warrant could be obtained. Unlike *Rubin,* however, there were no indications prior to the arrest of the Rodriguezes that appellant was aware of the police surveillance of his home or that the Rodriguezes attempted to warn him that an arrest had been made. Instead, the only basis for the fear that appellant had been alerted and would destroy evidence was the belief of Sergeant Brown, based on a previous visit to appellant's residence over a year earlier, that appellant had a police scanner. In order to justify the conclusion that appellant had learned about the Rodriguez arrest, the police had to assume that Sergeant Brown had accurately observed a scanner in appellant's home a year before, that the scanner was still in appellant's home,[2] that the scanner was turned on at the time of the Rodriguez arrest, and that appellant had been listening to the scanner. This, in our judgment, was too tenuous a basis upon which police could *reasonably* conclude that evidence in appellant's home would be destroyed before they could obtain a search warrant.

Moreover, in this case it is clear that police had ample opportunity to obtain a warrant in advance of their warrantless entry into appellant's home. Information via confidential informants had been supplied as early as November 15, 1985, twelve days prior to the warrantless entry, that the Rodriguezes would be delivering drugs to appellant's residence. Specifically, the suppression court summarized the information possessed and the action taken by the police as follows:

> The information provided by the informants consisted of the following:
>
> (1) The Rodriguezes brought cocaine into York in the past;
>
> (2) That on the 15th of November, the Rodriguezes would be bringing drugs to York to sell;

---

2. Police found no scanner in appellant's home, and appellant denied ever having one.

(3) That the drugs would be delivered to an address on Bergman Street in York and to Stephen Conn's residence;

(4) That on the 15th of November, the Rodriguezes actually delivered cocaine to Conn at his residence;

(5) That on the 23rd and 27th of November, the Rodriguezes would again be in York to deliver drugs at the two aforementioned addresses;

(6) That the Rodriguezes had several different vehicles including a black Trans Am, a white Chevy and a Ford Mustang;

(7) That Conn would receive anywhere from one to three ounces of cocaine from the Rodriguezes;

(8) That the Rodriguezes would quickly get rid of the drugs.

At the preliminary hearing the police testified that they received information concerning [appellant and the Rodriguezes] from two reliable informants. We agree. Informant # 1, a poly-drug user, had provided information in the past which led to the issuance of four search warrants and the arrest and conviction of four defendants. Informant # 2, also a poly-drug user, had given information in the past to police officers in this case which had proven to be correct. See *Com. v. Benjamin,* 260 Pa.Super. 1, 393 A.2d 982, [9]85 (1978). The police surveillance established the following:

(1) On the 15th of November, the officers observed Mr. Rodriguez at 535 Bergman Street and later identified a car parked in the neighborhood with New Jersey tags which proved to be registered to Mrs. Rodriguez;

(2) They called the informant on the 15th of November and were informed that the Ridriguezes [sic] had been to the Conn residence prior to their being at the Bergman Street address;

(3) On the 23rd of November, the officers again found the Rodriguezes' car in York;

(4) On the 27th of November, the officers saw the Rodriguezes' car entering York via Route 83 and later observed it parked at the Conn residence.

With this information, the police had sufficient probable cause with which to obtain a warrant to search appellant's home even before they arrested the Rodriguezes.

If the police had obtained a warrant in this case [the] conviction[ ] would easily stand.... In a perfect world, the police use this information to obtain a search warrant. Warrant in hand, they go to the house, search it, and the suspects are apprehended.

Here, however, the police chose not to obtain a warrant. Instead they simply entered the premises.... *Where the police have ample opportunity to obtain a warrant, we do not look favorably on their failure to do so.*

*United States v. Impink, supra* at 1231 (emphasis added) (police claim that exigent circumstances justified warrantless entry rejected where a magistrate could easily have been consulted in advance). See also: *Commonwealth v. Forde, supra.*

The record in this case also discloses that prior to the time when the police followed and subsequently arrested the Rodriguezes, Sergeant Brown had informed Trooper Daryman, during their meeting at the district justice's office, that a possibility existed that appellant had a police scanner. Despite this knowledge, neither Brown nor Daryman informed Trooper Lokhaiser of the possible presence of a scanner until after the Rodriguezes had been arrested. In the meantime, Brown and Daryman, apparently unconcerned that appellant might be listening via police scanner, took no precautions whatsoever to limit radio transmissions which discussed police actions in connection with the Rodriguez arrest. Indeed, it was not until Trooper Lokhaiser had been informed about the police scanner, following the arrest of the Rodriguezes, that the fear that appellant would destroy evidence was articulated. It has been said that "[t]he government will not be allowed to plead its own lack

of preparation to create an exigency justifying warrantless entry." *United States v. Collazo, supra* at 1204. In *Collazo,* the United States Court of Appeals for the Fourth Circuit rejected the government's argument that spreading publicity regarding the arrests of co-defendants would cause the appellant to flee or destroy evidence where ample grounds had existed to obtain search warrants prior to the arrests of the co-defendants. See also: *Niro v. United States,* 388 F.2d 535 (1st Cir.1968).

Our examination of the decided cases suggests that the circumstances relied upon by the Commonwealth in the instant case were not of such exigency as to excuse the need for a warrant before police could force their way into appellant's home to seize the contraband which they believed they would there find.

■ For similar reasons we are constrained to agree with appellant's contention that the police violated the "knock and announce" rule in the instant case. The trial court concluded that, absent exigent circumstances, the police entry into appellant's home would have violated the "knock and announce" requirement. Because we have determined that the circumstances were not exigent and did not excuse the need for a warrant, we are also constrained to hold that the "knock and announce" rule was violated by the police when they entered appellant's home without first stating their purpose or waiting for a response to their knock. See: *Commonwealth v. DeMichel,* 442 Pa. 553, 277 A.2d 159 (1971) (plurality opinion) (before entering private home to conduct search or make arrest, police must, absent exigent circumstances, give notice of their presence and purpose as well as give occupants an opportunity to surrender premises voluntarily); *Commonwealth v. Cerulla,* 223 Pa.Super. 24, 296 A.2d 858 (1972) (same). See also: Pa.R.Crim.P. 2007.

For all these reasons, we conclude that the entry of police into appellant's home without a search warrant was unreasonable and in violation of the Fourth Amendment of the United States Constitution. Consequently, the evidence obtained as a result of the unlawful entry should have been

suppressed. See: *Commonwealth v. Johnson*, 474 Pa. 512, 520, 379 A.2d 72, 75 (1977) ("Evidence obtained in violation of an individual's constitutional right to be free from unreasonable searches and seizures cannot be used against him at trial.").

Without this evidence, it may be that appellant will not be convicted. However, in the words of a court as prestigious as the Pennsylvania Supreme Court, "[o]ne of the prices we have to pay for the security which the Fourth Amendment bestows upon us is the risk that an occasional guilty party will escape." *Commonwealth v. Newman*, 429 Pa. 441, 448, 240 A.2d 795, 798 (1968).

The judgment of sentence is reversed and the case is remanded for a new trial. Jurisdiction is not retained.