POPOVICH, Judge,
dissenting:
On appeal, we have the luxury of a full record which allows us to review claims of error “after the fact.” As a result, too often when we assess a case, our vision becomes clouded by the benefit of hindsight. Unfortunately, I believe that is what has occurred in this case.
I see no reason why the police did not procure a search warrant before effecting an entry into the gate house. By failing to obtain a warrant through accepted procedures, which were absolutely feasible under the facts of this case, the police instead manufactured exigent circumstances to conduct a search. Because I feel that the methods employed by the police violated the appellant’s rights, I respectfully dissent.
In the alternative, I note that the police did not determine that the gate house was a structure unfit for habitation until after they had entered it. Thus, the majority’s comprehensive discussion regarding an individual’s right to privacy in the home, is immaterial. One cannot fairly decide what constitutes a home after one sees the interior of a building. Rather, the police should have obtained a search warrant, based on their probable cause to believe that the fortified structure was being used as an outlet for illegal drug distribution. Then, there would have been no need to discuss the elements of a “home,” for clearly, regardless of the furnishings, operating a drug distribution center is violative of the law.
I begin this discussion by recognizing the long-standing principle that warrantless searches are presumed unreasonable unless the search is justified by an exception to the warrant requirement. Commonwealth v. York, 381 Pa.Su *40 per. 55, 552 A.2d 1092 (1989). In Coolidge v. New Hampshire, 403 U.S. 443, 454, 91 S.Ct. 2022, 2031, 29 L.Ed.2d 564 (1971) the United States Supreme Court stressed, “[a]s a general rule a search or seizure without a warrant is deemed unreasonable for constitutional purposes.” While the majority correctly states “that exigent circumstances excusing the warrant requirement arise where the need for prompt police action is imperative”,[1] I note that such a situation is the exception to the rule. As has been noted by many courts, scholars and legal commentators, it is of utmost importance that the exceptions to any rule do not operate to swallow the original principle. Commonwealth v. Conn, 377 Pa.Super. 442, 547 A.2d 768 (1988); Commonwealth v. Weik, 360 Pa.Super. 560, 521 A.2d 44 (1987); Commonwealth v. Daniels, 280 Pa.Super. 278, 286, 421 A.2d 721, 725 (1980) (“[a]ll decisions made pursuant to the exigent circumstances exception must be made cautiously, for it is an exception which by its nature can very easily swallow the rule unless applied only in restricted circumstances.”); Commonwealth v. Cubler, 236 Pa.Super. 614, 626, 346 A.2d 814, 820 (1975).
The majority aptly sets forth the law as it relates to “exigent circumstances.” See Majority opinion, at 35-36. A police officer may circumvent the warrant requirement in the event of exigency; in the instant case, to avoid the destruction of evidence. Commonwealth v. Holzer, 480 Pa. 93, 102, 389 A.2d 101, 106 (1978); Commonwealth v. Ehrsam, 355 Pa.Super. 40, 512 A.2d 1199 (1986). See generally Commonwealth v. Rodriguez, 526 Pa. 268, 585 A.2d 988 (1991) (defines probable cause); Commonwealth v. Kendrick, 340 Pa.Super. 563, 490 A.2d 923 (1985) (accord). The determination of whether exigencies necessitated forgoing the procurement of a warrant is based on an examination of all of the surrounding circumstances. Commonwealth v. Harris, 429 Pa. 215, 239 A.2d 290 (1968); Commonwealth v. Hinkson, 315 Pa.Super. 23, 27, 461 A.2d 616, 618 (1983). See Commonwealth v. Ariondo, 397 Pa.Super. 364, 580 *41 A.2d 341 (1990). See also Commonwealth v. Jones, 391 Pa.Super. 292, 570 A.2d 1338 (1990).
Here, I have reviewed the facts of this case as they appear in the record and as they are related by the majority in its opinion. See Majority opinion, at 24-27, 35-39. After reading all of the pertinent materials, I conclude that the police did not encounter exigent circumstances sufficient to relieve them of the duty to obtain a search warrant.
The majority writes, “The issue is not whether some action undertaken by the police in the performance of their duties contributed to the circumstances which created the exigencies justifying a warrantless entry. Rather, the inquiry is whether the police manufactured the exigency in a deliberate attempt to avoid the warrant requirement.” Majority opinion, at 35-39. I do not believe that these issues are mutually exclusive. I am convinced that the police, by their actions, created exigent circumstances. Cf. Commonwealth v. Ariondo, 397 Pa.Super. 364, 580 A.2d 341 (1990). However, this is not to imply that they “invented” such circumstances purposely or with a deliberate intent to validate the warrantless entry. Nor am I suggesting that we “second-guess their effectiveness.” See Majority opinion, at 38.
My concern is that the police utilized an incorrect procedure which in turn led to a mistake of constitutional proportions. The fact that the infringement yielded evidence of crime does not cure the original defect, much less justify it.[2] Conversely, to set precedent in the manner advocated by the majority is, in effect, to erode further the protections afforded through the Fourth Amendment. This comment is not meant to condone illegal activity, but rather to recognize that individual rights are of paramount importance in our society, and to rationalize exceptions to the exceptions is to render the constitutional provisions meaningless. Cf. Ariondo, supra. This was not a difficult case. Unfortunately, as we have noted time and time again, hard cases *42 can make bad law. See Commonwealth v. Nicholas, 405 Pa.Super. 242, 592 A.2d 98 (1991); Commonwealth v. Schwartz, 304 Pa.Super. 125, 128, 450 A.2d 133, 134 (1982); Commonwealth v. Kjersgaard, 276 Pa.Super. 368, 379, 419 A.2d 502, 508 (1980) (Gates, J., dissenting); In re Butler Tp. School Dist., 158 Pa. 159, 166, 27 A. 849, 851 (1893).
The majority reproduces only a part of the Fourth Amendment. Majority opinion, at 26. Thus, I feel compelled to set forth its provisions, in full, below.
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. CONST. amend. IV. Cf. PA. CONST. art. I, § 8. Here, the police had, or could have had, sufficient probable cause to obtain a search warrant properly. See N.T., March 2. 1990, at 5-7. See Majority opinion, at 24-25, 35-37. See Appellant’s brief, at 21.[3] Probable cause was formed, or could have been formed, before Officer Powell purchased the drugs with the recorded ten dollars. He certainly had enough information, or could have obtained information sufficient to conclude that the gate house operators were engaged in illegal activities. See N.T., March 1, 1990, at 5, 24. See Commonwealth v. Conn, 377 Pa.Super. 442, 547 A.2d 768 (1988).
Even if Officer Powell was unsure that the gate house was an illegitimate enterprise, there is no indication that the occupants were engaged in a “one time” business. Officer Powell could have made a purchase using an untreated bill.[4] After receiving the drugs, he could have procured a search *43 warrant.[5] Then, to apprehend the dealer, he could have exchanged the ten dollar bill containing the blue dye formula, for the cocaine. Once Officer Powell was in possession of the evidence, he could have entered the building to effectuate an arrest.[6] See Commonwealth v. Brundidge, 404 Pa.Super. 106, 119, 590 A.2d 302, 309 (1991) (where no exigent circumstances existed, the search of a jacket left in a hotel room should have been conducted pursuant to a judicial warrant issued upon probable cause). Cf. Commonwealth v. Rodriquez, 387 Pa.Super. 271, 564 A.2d 174 (1989), appeal granted 526 Pa. 632, 584 A.2d 315 (1990). See also Commonwealth v. Reviera, 387 Pa.Super. 196, 199-208, 563 A.2d 1252, 1253-57 (1989)[7] (discussing anticipatory search warrants).
The facts before this Court do not convince me that there was exigency. In fact, the majority writes that the “[appellant had been in bed with a woman who likewise had blue dye on her body,” which indicates to me that the drug seller may not have even noticed the dye. The record does not reveal the appellant’s presence of mind at the time of the search, but evidently he did not attempt to dispose of the soiled bill. It was found in his pants pocket. N.T., March 1, 1990, at 19. Majority opinion at 25. Thus, I find ques *44 tionable, or at least debatable, the majority’s conclusion that “[cjlearly, the discovery of the dye would alert the seller to the police presence, causing him to destroy the evidence and/or flee the premises.” Majority opinion at 36.[8] Cf. Appellant’s brief, at 16-17.
In sum, I read the law as does the majority. When I apply the facts of this case, however, I cannot conclude that Officer Powell, in conducting his investigation, was confronted with such emergency circumstances that he could not get a search warrant. See Commonwealth v. Rispo, 338 Pa.Super. 225, 231, 487 A.2d 937, 940 (1985). The nature of the appellant’s infractions were such that a warrant could have been procured before any buys occurred.[9] Thus, I would be constrained to find that the police employed methods that were neither “reasonable” nor “legitimate.” I would have reversed the trial court’s denial of the appellant’s motion to suppress.[10] Because the evidence *45 was used subsequently to convict the appellant, here, I would vacate the judgment of sentence and remand this case for a new trial.
I also dissent to the majority’s classification of a home. First, I would not have reached this issue in light of my preferred disposition of the instant case, as outlined above. Second, even if I were to conclude that the police encountered exigent circumstances sufficient to justify the pursuit of a warrantless entry, still I would hesitate to discuss this claim. There would be no need to engage in further constitutional analysis if the appellant’s case could be resolved without such an evaluation. Cf. Ballou v. State Ethics Commission, 496 Pa. 127, 436 A.2d 186 (1981); Mt. Lebanon v. County of Bd. of Elections of Allegheny County, 470 Pa. 317, 322, 368 A.2d 648, 650 (1977) (when cases contain both constitutional and non-constitutional issues, we should not reach the merits of the constitutional claims if the case may be decided properly on non-constitutional grounds). Furthermore, if exigent circumstances existed, then the appellant’s “expectation of privacy” argument would be defeated simply by the nature of the activity which gave rise to probable cause. See generally Commonwealth v. Holzer, 480 Pa. 93, 102, 389 A.2d 101, 106 (1978) (exigent circumstances except the warrant requirement).
In any event, I disagree with the majority’s characterization of a “home” inasmuch as this case implicates the Fourth Amendment and we must be careful in interpreting its provisions. Commonwealth v. Conn, 377 Pa.Super. 442, 547 A.2d 768 (1988). Most basically, I advance a two-pronged proposition. First, the quality of one’s living quarters has nothing to do with one’s right of privacy. Second, I believe that the appellant maintained a right of privacy, because the police did not know what lurked behind the store-front until they were inside. See N.T., March 1, 1990, at 16-17. See also id. at 35-36.[11] Had the police found *46 adequate living quarters, then the majority’s discussion would be very different.
The point that I wish to stress is that the discussion should not be any different. Furnishings are irrelevant to an evaluation of one’s privacy expectations. At the same time, the Katz case, decided by the United States Supreme Court, distinguishes the objective and subjective expectations of privacy and allows us to discern the legitimacy of one’s expectations versus the reasonableness of those expectations as perceived by society. Katz v. United States, 889 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). See also Commonwealth v. Blystone, 519 Pa. 450, 549 A.2d 81 (1988), cert. granted in part by Blystone v. Pennsylvania, 489 U.S. 1096, 109 S.Ct. 1567, 103 L.Ed.2d 934 (1989), aff'd 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990).
In Commonwealth v. Lemanski, 365 Pa.Super. 332, 529 A.2d 1085 (1987), this Court, discussing the Fourth Amendment, found that the appellant had a reasonable expectation of privacy in his greenhouse, which was attached to his home. The appellant was convicted of possession of a controlled substance and manufacture of marijuana as a result of police surveillance by means of binoculars specially equipped with zoom lenses. In reversing and remanding the appellant’s case for a new trial, this Court engaged in a comprehensive Fourth Amendment analysis and reminded us of the following principles.
*47 The Fourth Amendment protects the rights of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. A search within the meaning of the Fourth Amendment occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. Whether or not a person who invokes the protection of the Fourth Amendment may claim a “reasonable expectation of privacy” is determined by two inquiries: (1) whether, by his conduct, the person has exhibited an actual (subjective) expectation of privacy; and (2) whether that expectation of privacy is one that society is prepared to recognize as reasonable.
Id., 365 Pa.Superior Ct. at 345, 529 A.2d at 1091 (quotation marks and citations omitted). With these standards in mind, the Lemanski court found that the greenhouse, which was within the curtilage area of the appellant’s house, was entitled to Fourth Amendment protections. This Court, recognizing that the Fourth Amendment protects people and not places, concluded that the occupants of the house enjoyed a reasonable expectation of privacy in the curtilage and that that expectation of privacy was one that society is willing to accept. Id., 365 Pa.Superior Ct. at 349, 529 A.2d at 1093.
Here, I am willing to concede that the appellant was using an abandoned store front to conceal his illegal business. I also recognize that the Fourth Amendment was not designed to protect the situs of unlawful activity. However, as the Lemanski court aptly stated,
we emphasize that the Fourth Amendment makes no distinctions between lawful and unlawful conduct. We cannot, in hindsight, choose to protect unlawful conduct with less vigor. Rather, we must balance legitimate law enforcement techniques and the legitimate privacy rights of citizens in a free and open society.
Id., 365 Pa.Superior Ct. at 349, 529 A.2d at 1093. I echo the rationale of Justice Powell in California v. Ciraolo, 476 U.S. 207, 226 n. 11, 106 S.Ct. 1809, 1819 n. 11, 90 L.Ed.2d 210 (1986) (dissenting), wherein he noted that while the right of privacy in the home does not encompass the right to pursue unlawful activity, the Fourth Amendment re *48 quires the police to secure a search warrant before intruding upon an individual’s privacy.
In sum, I find that the warrantless search of the premises in issue violated the appellant’s Fourth Amendment rights. I conclude that no exigent circumstances existed which precluded the police from obtaining a warrant. As a result, the entry into the structure was violative of the Constitution and there is no need to reach the issue of whether the building was a home. Even if I were to reach the issue of whether the appellant was entitled to a privacy right in the storefront, which ultimately proved not to be a dwelling, I would be constrained to find that the appellant manifested a subjective expectation of privacy and that society would be willing to accept one’s occupation of a store front as reasonable.[12] While this conclusion sounds harsh and may be unpopular, I reach it only because the determination that the store was not a dwelling house was made in hindsight.[13] Had the police entered the structure to find a more suitable residence, the result (or at least the evaluation), under the majority’s analysis, would be different. This cannot be.
Illegal activity cannot be condoned. However, I cannot overlook the warrant requirement.[14] I am confident in the strength of my argument, especially here, where the record fully supports my position.
First, to procure a warrant (at the very onset) would have presented a minimal burden to the police officers. Simultaneously, such a procurement would have legalized the police *49 activity. Second, by conforming to the constitutional mandate, there is no doubt in my mind that the evidence seized as a result of the investigation would have been admissible. Third, the police had available to them a host of options which, in my view, would have resulted in the confiscation of drugs and the arrest(s) of the accused individuals. By not pursuing their options, the police officers effectuated an illegal search. Much more importantly, by failing to entertain even the thought of securing a search warrant, I believe that the police violated the appellant’s Fourth Amendment rights to an extent that is inexcusable. I disagree with the majority’s attempts to justify misbehavior in an effort to legitimize certain ends.
As our Supreme Court stated in Commonwealth v. Miller, 513 Pa. 118, 127, 518 A.2d 1187, 1192 (1986) and as this Court aptly quoted in Lemanski, supra,
To maintain freedom for all we must maintain an ordered society, which requires that we effectively enforce our laws. Thus, the strictures that are to be applied to preserve our freedom must never be allowed inadvertently to provide the vehicle for undermining it. Of equal concern is that we guard against surrendering in fear, in a perceived lawless era, fundamental protections that are essential to the preservation and maintenance of our free society.
Miller, 513 Pa. at 127, 518 A.2d at 1192, cited by Lemanski, 365 Pa.Super. at 349, 529 A.2d at 1093.[15] I believe that this case exemplifies the need for reiteration of the above principles.
Therefore, I respectfully dissent.

. Majority opinion at 35.

. See Commonwealth v. Conn, 377 Pa.Super. 442, 452, 547 A.2d 768, 773 (1988).

. Commonwealth v. Dumont, 370 Pa.Super. 155, 536 A.2d 342 (1987) (an affidavit in support of a search warrant need only set forth the probability of criminal activity, not a prima facie case).

. See N.T., March 1, 1990, at 46-47. Officer Powell acknowledged that "another way of going about this would have been to make a buy without using that dye, and just [by using] regular, marked money____" Id. at 46.

. See N.T., March 1, 1990, at 35. (Q. “In Philadelphia, they have a mechanism whereby one can obtain Search Warrants 24 hours a day, through the Bail Commissioner, at the Police Administration Building; is that right?” A. "That’s correct.”).

. The exigent circumstances in this case certainly arose out of police investigative conduct. However, I am not persuaded that the actions of the law enforcement agents were reasonable. See Commonwealth v. Conn, 377 Pa.Super. 442, 547 A.2d 768 (1988). Therefore, I can not adopt the majority’s reliance on State v. Hutchins, 116 N.J. 457, 561 A.2d 1142 (1989) as applicable here. See Majority opinion, at 37, n. 18. Also, as I previously expressed in the body of this dissenting opinion, I do not attribute mal-intent or deliberate misconduct to the police officers who worked on this case. Nevertheless, good faith does not relieve the officers of their duty to act reasonably and within the confines of the rules whenever possible. Cf. Hutchins, supra at 472-473, 561 A.2d at 1151.

. Appeal granted 525 Pa. 598, 575 A.2d 564 (1990); appeal dismissed 526 Pa. 41, 584 A.2d 308 (1991). An anticipatory search warrant would have been of exceptional use in the instant case. Then, the problem of false exigency could have been avoided.

. The majority determines, in part, that the use of the blue dye was a reasonable tactic, designed to aid in the investigation and eventual apprehension and identification of the drug dealer. Majority opinion at 38. While I do not dispute the effectiveness of this method, I am simply disturbed by the procedure employed. The exception to the warrant requirement should never have taken effect here, for there should have been a warrant. Moreover, the investigative purpose of the dye may have been unrelated to the warrant requirement, but this does not negate the constitutional mandate! See Majority opinion at 38, n. 20, 38. See also N.T., March 1, 1990, at 30-31. See Appellant’s brief, at 8. The warrant requirement may be excused under limited circumstances, one being exigency. See Commonwealth v. Rispo, 338 Pa.Super. 225, 487 A.2d 937 (1985). Yet, if a warrant can be obtained, then using a bill treated with indelible ink to discover or confiscate evidence of illegal activity before procuring the warrant does not excuse the lack of procurement. It only makes the error more glaring. Cf. Commonwealth’s brief, at 19.

. Instead, Officer Powell admitted that the police made no effort at all to obtain a search warrant. See generally N.T., March 1, 1990. See id. at 31-32.

. I add here that the majority’s sentiments, appearing at page 19 of its slip opinion, are well-taken. However, I do not feel that by my suggestions the police would be forced to engage in "investigative methods which would afford criminals greater success in evading justice.” Rather, I feel that upholding individual rights, while encouraging efficient yet safe law enforcement, will further the purpose of the Constitution as well as implement confidence in our system.

. The court asked Officer Powell whether, in his experience with gate houses, people normally live there. Officer Powell stated, "not nor *46 mally, no.” The court then inquired, "But in this house, people were living at least on part of the first floor, on the second floor and on the third floor; is that correct?” Officer Powell replied as follows.
On the second and third floors, it was set up like a boarding home. There were a couple of people that had rooms in there. "Living,” is a relative term. The place was really disgusting. In the room next to where he was, there was a five-gallon bucket with human feces and urine, and the bed that he was in — I wouldn't call it a bed.
Id. at 35-36. See also id. at 16-19. I do not find Officer Powell’s comments probative of the issue on appeal, nor do I find his observations relevant, as they were made after entry. In fact, even if Officer Powell’s testimony was material, it would tend to support the appellant’s position; to wit, that the gate house was being occupied as a residence.

. See Moving Into Abandoned Housing, The Philadelphia Inquirer, July 9, 1991, at 1 (discussing "abandominiums" — deserted buildings that are providing shelter to the homeless).

. Similarly, it cannot be argued that because the appellant’s home address differed from that of the gate house, the appellant could not have evidenced a subjective expectation of privacy in the structure. Inasmuch as the appellant gave his home address to the police after he had been apprehended, there is no way that the police could have been sure that the appellant did not live behind the storefront. N.T., March 1, 1990, at 22. Cf. id. at 34. Cf. Majority opinion at 34, n. 15.

. See McDonald v. United States, 335 U.S. 451, 455, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948).

. See also Commonwealth v. Newman, 429 Pa. 441, 448, 240 A.2d 795, 798 (1968). See Appellant’s brief, at 24.