J-A18035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES M. WALDRON | : | |
| | : | |
| Appellant | : | No. 1653 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 28, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0001233-2023

BEFORE:  OLSON, J., DUBOW, J., and BECK, J.

MEMORANDUM BY DUBOW, J.:                **FILED SEPTEMBER 12, 2025**

Appellant James M. Waldron appeals from the judgment of sentence entered by the Delaware County Court of Common Pleas after his bench trial conviction of Possession of a Firearm Prohibited and Firearms Not to be Carried Without a License.[1]  He challenges the denial of his suppression motion.  After careful review, we affirm.

We glean the relevant facts and procedural history from the trial court's October 8, 2024 Opinion and the certified record.  On October 4, 2022, Haverford Township Police Officer Brian McDonald responded to a radio dispatch relaying that a man, later identified as Appellant, was slumped over in the driver's seat of a pick-up truck with the engine running.  The officer parked on the opposite side of the street, walked to Appellant's open window,

_____

[1] 18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1)

and tried to rouse Appellant to no avail. When Officer McDonald reached into Appellant's car through the open window to turn the car off, Appellant awoke. The officer observed that Appellant's eyes were glassy and bloodshot with constricted pupils, and his speech was sluggish. In response to Officer McDonald's questions, Appellant said he had not taken any alcohol or drugs and had no medical concerns.

Concerned that Appellant was passed out with the window open on a cold rainy day, Officer McDonald asked Appellant to step out of the car. While doing a pat down, the officer asked if Appellant had any firearms on his person, and Appellant stated that he did not. The officer then asked Appellant if he knew what time of day it was, and he responded that he thought it was afternoon even though it was actually 8:45 in the morning. Throughout this questioning, more police officers arrived at the scene.

During further questioning, Appellant stated that he had taken suboxone "before he got there" and told Officer McDonald that he had a prescription for it. N.T. Suppression, 10/5/23, at 21. After expressing concern for Appellant's health and safety, Officer McDonald administered several field sobriety tests, which Appellant did not perform successfully. Appellant declined Officer McDonald's request to submit to a chemical blood test. Officer McDonald placed him under arrest for suspicion of driving under the influence of a controlled substance.

During a search incident to arrest, Officer McDonald recovered drug paraphernalia in Appellant's overcoat. At the Haverford Police Station, a police

officer conducted a second search incident to arrest and recovered a handgun from an inside pocket of Appellant's overcoat. Appellant did not have a firearms license and is a person prohibited from possessing a firearm.

The Commonwealth charged Appellant with the above firearm violations, as well as Driving Under the Influence and various drug offenses. Appellant filed a motion to suppress asserting that the encounter with the police officers was not supported by reasonable suspicion or probable cause.

On October 5, 2023, the suppression court held a hearing at which Officer McDonald testified consistently with the above facts. The court admitted the video recording obtained from the officer's body camera. On November 20, 2023, the court denied the suppression motion.

Appellant proceeded to a stipulated bench trial on April 1, 2024, on the firearms offenses.[2] The court found him guilty, deferred sentencing, and ordered a pre-sentence investigation report ("PSI"). On May 28, 2024, the court sentenced Appellant to an aggregate term of 36 to 84 months' incarceration.

Appellant timely appealed and filed a court-ordered Pa.R.A.P 1925(b) Statement. The court submitted a responsive Rule 1925(a) Opinion.

Appellant presents the following issues for our review:

1. Whether the lower court erred by denying [Appellant's] suppression motion, where the police subjected him to an unlawful investigative detention when, with

_____

[2] The Commonwealth withdrew the DUI and drug related offenses prior to the stipulated bench trial. N.T.-Trial, 4/1/24, at 4.

- 3 -

emergency lights activated, police officers pulled alongside, in front of, and behind his legally parked vehicle.

2. Whether the lower court erred by denying [Appellant's] suppression motion, where, though a police officer did not have reasonable suspicion that [Appellant] drove, operated, or was in actual physical control of the movement of the vehicle, the officer subjected him to an unlawful investigative detention by administering field sobriety tests.

Appellant's Br. at 2-3.

In his first issue, Appellant contends that the court erred in denying his suppression motion because "the police initiated an investigative detention" that "was unsupported by a reasonable, articulable belief that he was engaged in criminal activity." Appellant's Br. at 13-14. He also contends that the encounter cannot be excused by the community caretaking exception to our search and seizure laws because "the police officers' level of intrusion was not commensurate with the perceived need for assistance." *Id*. at 17-18.

Our review of a challenge to the denial of a motion to suppress "is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Stem***, 96 A.3d 407, 409 (Pa. Super. 2014) (citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the suppression court." ***In re L.J.***, 79 A.3d 1073, 1080 (Pa. 2013). We defer to the suppression court, "as factfinder[,] to pass on the credibility of witnesses and the weight to be given to their testimony." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super. 2003).

- 4 -

"[H]owever, we maintain *de novo* review over the suppression court's legal conclusions." ***Commonwealth v. Brown***, 996 A.2d 473, 476 (Pa. 2010).

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of our state Constitution "protect citizens from unreasonable searches and seizures." ***In re D.M.***, 781 A.2d 1161, 1163 (Pa. 2001). "To secure the right of citizens to be free from [unreasonable searches and seizures], courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." ***Commonwealth v. Beasley***, 761 A.2d 621, 624 (Pa. Super. 2000). We, thus, categorize encounters as follows: (1) mere encounters, which require no suspicion that criminal activity is afoot; (2) investigative detentions, which require reasonable suspicion; and (3) custodial detentions, which require probable cause. ***See Commonwealth v. Collins***, 950 A.2d 1041, 1046 (Pa. Super. 2008) (*en banc*). An investigative detention must be supported by "reasonable suspicion of unlawful activity." ***Commonwealth v. Thran***, 185 A.3d 1041, 1044 (Pa. Super. 2018) (citation omitted).

However, one exception to this requirement is embodied in the community caretaking doctrine. ***Commonwealth v. Livingstone***, 174 A.3d 609, 625-27 (Pa. 2017). The community caretaking doctrine includes the following three exceptions: "the emergency aid exception; the automobile impoundment/inventory exception; and the public servant exception, also sometimes referred to as the public safety exception." ***Id.*** at 626-27. "[T]he

community caretaker exception is only invoked when the police are not engaged in crime-solving activities. With respect to Fourth Amendment guaranties, this is the key distinction: the defining characteristic of community caretaking functions is that they are totally unrelated to the criminal investigation duties of the police." *Id.* at 627 n.12 (quotation marks and citations omitted). Thus, actions taken to render aid "do not offend constitutional principles, because police are motivated by a 'desire to render aid or assistance, rather than the investigation of criminal activity.'" *Commonwealth v. Hall*, 305 A.3d 1026, 1034 (Pa. Super. 2023), *reargument denied* (Pa. Super. 2024), *allocatur denied*, 323 A.3d 588 (Pa. 2024)(citations omitted).

For an officer's conduct to fall within the community caretaking exception, the following must be true:

> (1) the officer must point to specific, objective, and articulable facts which would reasonably suggest to an experienced officer that assistance was needed; (2) the police action must be independent from the detection, investigation, and acquisition of criminal evidence; and, (3) based on a consideration of the surrounding circumstances, the action taken by police must be tailored to rendering assistance or mitigating the peril. Once assistance has been provided or the peril mitigated, further police action will be evaluated under traditional Fourth Amendment jurisprudence.

*Commonwealth v. Ward*, 318 A.3d 410, 414 (Pa. Super. 2024) (citation omitted). Accordingly, "when the community caretaking exception is involved to validate a search or seizure, courts must meticulously consider the facts

and carefully apply the exception in a manner that mitigates the risk of abuse." *Id.* at 415 (citation omitted).

Here, the suppression court concluded that Appellant's initial encounter with police fell within the community caretaking function. Tr. Ct. Op., 10/8/24, at 4. Specifically, the court observed that, as a result of the radio dispatch of an unconscious man in the driver's seat of a running vehicle, "several officers were alerted to the case and arrived on the scene." *Id*. Indeed, when Officer McDonald arrived first on the scene with sirens and lights flashing, Appellant was slumped down and unconscious in the driver's seat and did not awaken until the officer reached into the car to turn off the ignition. Although the other officers arrived on the scene simultaneously and after Appellant exited the vehicle, there is no evidence they were responding for any reason other than as part of their caretaking function.[3]

Based on our review, we agree that the police officers were responding to a radio dispatch of a man in possible medical distress, not to reports of criminal activity. Accordingly, we conclude that the suppression court did not err in concluding that the initial encounter fell within the community caretaking exception to our search and seizure law.

In his second issue, Appellant argues that "Officer McDonald did not have reasonable suspicion of criminal activity necessary to subject [Appellant] to field sobriety tests [and, c]onsequently, the [C]ourt must vacate the

_____

[3] Officer McDonald was the only police officer to testify at the suppression hearing.

- 7 -

judgment of sentence." Appellant's Br. at 19. He contends that there was no testimony that Appellant's speech was "slurred," as the suppression court noted, and the officer had no evidence that Appellant had been driving, operating, or in control of his vehicle prior to his encounter with Officer McDonald so as to support the administration of the field sobriety tests. *Id.* at 20-23 (relying on *Bold v. Dep't of Transp., Bureau of Licensing*, 320 A.3d 1185 (Pa. 2024)). We disagree.[4]

In *Bold*, our Supreme Court addressed Section 1547 of our Vehicle Code, which provides for the suspension of an individual's driving privileges if the person had refused to submit to chemical testing when "an officer ha[d] reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle" while under the influence of alcohol or a controlled substance. 75 Pa.C.S. § 1547. In so doing, it reaffirmed its holding in *Banner v. Commonwealth Dep't of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203 (Pa. 1999), that there must be some evidence that the driver had actually driven the car in order for the implied consent statute to be applicable. Specifically, the *Bold* Court reiterated:

---

[4] Appellant also argues that the reasoning of *Bold* should be applied to "the DUI crimes that [Appellant] was convicted of[.]" Appellant's Br. at 23. In fact, as noted above, Appellant was not convicted of DUI because the Commonwealth withdrew those charges before trial. N.T. Trial, 4/1/24, at 4.

In determining whether an officer had reasonable grounds to believe that a motorist was in actual physical control of a vehicle, the court must consider the totality of the circumstances, including the location of the vehicle, whether the engine was running and whether there was other evidence indicating that the motorist had driven the vehicle at some point prior to the arrival of the police.

*Bold*, 320 A.3d at 1201 (citation omitted).

In *Commonwealth v. Dirosa*, 249 A3d 586, 589 (Pa. Super. 2021), this Court determined that the Commonwealth presented sufficient evidence that the appellant "drove, operated, or was in actual physical control of the vehicle" so as to support the appellant's DUI conviction. We noted

it is undisputed that officers discovered Appellant's vehicle outside a Wawa at approximately 2:30 a.m. in which Appellant had failed to maneuver his vehicle between the clearly marked lines of the handicapped parking spaces in front of the store. Appellant, who was slumped over in the driver's seat of the running vehicle, was initially unresponsive when officers tried to wake him up. When Appellant eventually awoke, he admitted to the officers that he had consumed 'three shots before leaving home.'

*Id*. at 590 (citation omitted). The Court concluded that, based on the evidence, it was reasonable for the fact-finder to infer that the appellant was intoxicated when he drove. *Id*.

Applying the holding of *Bold* and the reasoning of *DiRosa*, we cannot agree with Appellant's claim that the officer's administration of the field sobriety tests was unlawful. Here, Officer McDonald first encountered Appellant on a cold and rainy day passed out in the driver's seat of the pickup truck with his window down and the ignition running. Like the appellant in *DiRosa*, Appellant was initially unresponsive, despite the presence of sirens

and flashing lights. Moreover, when he was standing outside the vehicle and Officer McDonald had remarked on his sluggish demeanor and unusually sized pupils, he told Officer McDonald that he had taken suboxone "just before he got there." N.T. Suppression, at 21. Based on the totality of the circumstances, including Appellant's demeanor and physical appearance, we conclude that Officer McDonald properly administered the field sobriety tests as part of his investigative detention that was based on reasonable suspicion that Appellant had driven under the influence of a alcohol or a controlled substance. N.T. Suppression at 17-19. Accordingly, Appellant's second issue garners no relief.

In sum, the police officers responded to the radio dispatch of a man unconscious and slumped over the steering wheel of his car as part of their community caretaking function. Thereafter, based on Officer McDonald's observations of Appellant's appearance and demeanor, the officer developed reasonable suspicion that Appellant had driven under the influence which supported further investigation, including the administration of field sobriety tests. Appellant's challenge to the denial of his suppression motion, thus, fails, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/12/2025