J-S06022-24

2024 PA Super 133

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                       : PENNSYLVANIA
                                       :
            v.                         :
                                       :
                                       :
                                       :
JOSHUA W. WARD                         :
                                       :
            Appellant                  : No. 1613 EDA 2023

Appeal from the Judgment of Sentence Entered May 23, 2023
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0001157-2022


BEFORE: DUBOW, J., McLAUGHLIN, J., and SULLIVAN, J.

OPINION BY McLAUGHLIN, J.:                      **FILED JUNE 28, 2024**

Joshua W. Ward appeals from the judgment of sentence entered following his convictions for three counts of driving under the influence ("DUI") and one count each of possession of a small amount of marijuana and possession of drug paraphernalia.[1] Ward challenges the denial of his motion to suppress. We affirm.

Ward's convictions stem from his encounter with two Pennsylvania State Troopers while his vehicle was stopped on the shoulder of a ramp. Following this encounter, the troopers arrested Ward for DUI. Ward filed a motion to suppress, arguing that the encounter with the troopers was illegal because the troopers did not have a warrant, they lacked reasonable suspicion or probable cause, and the stop was not justified by the community caretaking

---

[1] **See** 75 Pa.C.S.A. §§ 3802(d)(1)(i), (d)(1)(iii), (d)(2), and 35 P.S. §§ 780-113(a)(31)(ii), (a)(32), respectively.

doctrine or any other warrant exception. **See** Motion to Suppress, filed 8/18/22, at ¶ 10. He argued that any evidence recovered from his vehicle should be suppressed because of the illegal stop. **See id.** at ¶ 11.

The court held a hearing on the motion where Trooper Colton Demberger testified. N.T., Suppression Hearing, 8/29/22. He explained that while on duty with his partner, Trooper Justin Pfeifer, at approximately 10:53 p.m., he observed a vehicle parked on the shoulder "at the top of the ramp." **Id.** at 8, 18. Trooper Demberger observed that "[t]he vehicle was running and I saw the driver's side door was ajar." **Id.** at 8. Trooper Demberger testified that he and his partner pulled behind the vehicle and activated the police car's lights. **Id.** at 8, 11. He explained that they "pulled up behind the vehicle to check on the welfare of the operator, because we believed him to be throwing up[.]" **Id.** at 8. He also explained that a welfare check is not a traffic stop but rather entails "checking on the operator[.]" **Id.** at 10.

When Trooper Demberger approached the driver of the vehicle, he met Ward, who was the sole occupant of the vehicle, and asked "if everything was okay." **Id.** at 10, 13. Trooper Demberger testified that Ward "did admit that he was throwing up and he was sweating profusely." **Id.** at 9. He also testified that when he approached the vehicle, Ward's "legs were outside the driver's side door and he was leaning over," such that it appeared to the trooper that Ward "was throwing up[.]" **Id.** at 11. Trooper Pfeifer, who approached the passenger side of the vehicle, "observed a pill container in the passenger side door compartment[.]" **Id.** at 9. Trooper Demberger noticed a smell of

marijuana coming from the vehicle and "asked if [Ward] had consumed marijuana." *Id.* at 10. Ward admitted that he had, earlier in the day. *Id.* Trooper Pfeifer asked Ward to show the pill container, which he did, and the troopers observed that it contained marijuana leaves. *Id.* Trooper Demberger testified that at the point of smelling the odor of marijuana, the "welfare check then turned into a DUI investigation." *Id.*

On cross-examination, defense counsel introduced the Motor Vehicle Recording ("MVR") footage. *Id.* at 21. Trooper Demberger agreed that based on the footage, Ward was standing outside of the vehicle and then sat down in the driver's seat. *Id.* at 23. He also agreed that the recording showed that Ward's vehicle was "fully off of what would be considered the lane of travel on the on-ramp[.]" *Id.*

The trial court denied the motion to suppress. *See* Order, filed 12/6/22. It concluded that Ward was seized but the public servant exception of the community caretaking doctrine applied.[2] The court explained that Trooper Demberger's "main purpose was to render assistance to [Ward] who appeared to be sick." *See* Opinion, filed 12/6/22, at ¶ 44. It noted that Ward's vehicle was on the "ramp with its driver's door open and its operator, who appeared to have been vomiting, out of the vehicle." *Id.* at ¶ 40. The court also reasoned that the troopers "spoke to Mr. Ward in an effort to determine whether he in

_____

[2] The court stated that the emergency aid exception applied but analyzed the facts of the case according to the public servant exception of the community caretaking doctrine.

fact needed assistance." *Id.* at ¶ 44. The court also determined that the troopers had reasonable suspicion that Ward had been driving under the influence.

Ward proceeded to a jury trial, and the jury found him guilty of the above-referenced offenses. The court sentenced Ward to an aggregate term of 20 months to 84 months incarceration for DUI and a concurrent term of one year probation for the possession of drug paraphernalia. The court imposed no further penalty for possession of a small amount of marijuana. This timely appeal followed.[3]

Ward raises the following issues:

I.     Was the suppression court correct in denying [Ward's] motion to suppress all evidence recovered from [Ward], following his unlawful detention?

II.    Was the suppression court correct in finding that [Ward] was lawfully seized and detained without a warrant?

III.   Was the suppression court correct in finding that the stop of [Ward] was lawful and justified by the Community Caretaker Doctrine or one of its recognized exceptions, including the public servant exception?

Ward's Br. at 4.

When reviewing an order denying a motion to suppress, "we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted." ***Commonwealth v. Yandamuri***,

---

[3] On July 31, 2023, the trial court granted Ward leave to file a *nunc pro tunc* direct appeal. ***See*** Order, filed 7/31/23.

159 A.3d 503, 516 (Pa. 2017). "Our scope of review of suppression rulings includes only the suppression hearing record[.]" *Id.* We are bound by the suppression court's factual findings that are supported by the record. *See id.* Where there is a question of law, our standard of review is *de novo*. *See Commonwealth v. McMahon*, 280 A.3d 1069, 1071 (Pa.Super. 2022).

Ward's issues on appeal ultimately challenge whether he was lawfully seized and if not, whether the court correctly determined that an exception applied. Ward claims that he was subjected to an unlawful seizure because the troopers had no reasonable suspicion of criminal activity. He notes that he did not feel free to leave after the troopers parked behind his vehicle with their patrol car lights activated. He further disputes the applicability of the "the commun[i]ty caretaker doctrine or one of its recognized exceptions, including the public servant exception." Ward's Br. at 20. Ward concedes that the evidence supports the first factor of the public servant exception. *See id* at 22. He maintains, however, that the second and third factors were not met. He claims that "[t]he police caretaking action in this instance was not independent from the detection, investigation, and acquisition of criminal evidence." *Id.* He also notes that Trooper Demberger did not provide him "any actual aid" and instead "jumped almost immediately to asking" about the pill bottle in the side passenger door pocket and whether he had smoked marijuana. *Id.*

The Commonwealth does not dispute the finding that Ward was seized. It argues, however, that the public servant exception applied.

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect citizens against unreasonable searches and seizures. *See Commonwealth v. Garibay*, 106 A.3d 136, 139 (Pa.Super. 2014). An individual is seized "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Commonwealth v. Livingstone*, 174 A.3d 609, 619 (Pa. 2017) (citation omitted) (plurality).[4]

One form of seizure is an investigative detention. *See Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa.Super. 2000) (noting there are three types of encounters citizens may have with police: a mere encounter, an investigative detention, or a custodial detention). An investigative detention must be supported by "reasonable suspicion of unlawful activity." *Commonwealth v. Thran*, 185 A.3d 1041, 1044 (Pa.Super. 2018) (citation omitted). One exception to this requirement is the community caretaking doctrine. *See Livingstone*, 174 A.3d at 625-26.

The community caretaking doctrine embodies three exceptions: "the emergency aid exception; the automobile impoundment/inventory exception; and the public servant exception, also sometimes referred to as the public safety exception." *Id.* at 626-27. The *Livingstone* Court explained that "for a seizure to be justified under the public servant exception,"

> [(1)] the officer must point to specific, objective, and
> articulable facts which would reasonably suggest to an

---

[4] *See also Commonwealth v. Strickler*, 757 A.2d 884, 889 (Pa. 2000).

experienced officer that assistance was needed; [(2)] the police action must be independent from the detection, investigation, and acquisition of criminal evidence; and, [(3)] based on a consideration of the surrounding circumstances, the action taken by police must be tailored to rendering assistance or mitigating the peril. Once assistance has been provided or the peril mitigated, further police action will be evaluated under traditional Fourth Amendment jurisprudence.

*Id.* at 637. The actions by the police should be "motivated by a desire to render aid or assistance, rather than the investigation of criminal activity" and "the level of intrusion must be commensurate with the perceived need for assistance." *Id.* at 627, 637. Furthermore, "when the community caretaking exception is involved to validate a search or seizure, courts must meticulously consider the facts and carefully apply the exception in a manner that mitigates the risk of abuse." *Id.* at 637 (citation omitted).

Assuming, without deciding, that a seizure occurred here, we examine whether the public servant exception applies. The trial court and the Commonwealth maintain that it does. The trial court noted that Trooper Demberger saw Ward's vehicle parked on a highway ramp with the driver's side door open and testified the driver appeared to be vomiting. It also noted that Trooper Demberger's actions "were commensurate with the level of need . . . perceived in the situation." Opinion, filed 12/6/22, at ¶ 51.[5] Similarly, the Commonwealth claims that the trooper articulated specific and objective facts that would reasonably suggest that Ward needed aid. It notes that Trooper

_____

[5] The trial court relied on its opinion from the denial of the motion to suppress in *lieu* of a Rule 1925(a) opinion. *See* Opinion *Sur* Rule 1925(a), filed 8/15/23.

Demberger asked Ward how he was feeling and implemented the least intrusive means that was commensurate with Ward's perceived need for assistance, by pulling behind the vehicle with emergency lights activated.

We turn our attention to the second and third factors of the public servant exception, given that Ward conceded the first factor. *See* Ward's Br. at 22. As the trial court concluded, Trooper Demberger's actions aligned with his concern that Ward was sick, which was "independent from the detection, investigation, and acquisition of criminal evidence[.]" *Livingstone*, 174 A.3d at 637. Before his partner saw the pill bottle and before Trooper Demberger noticed the smell of marijuana, Trooper Demberger asked Ward "if everything was okay." N.T. at 10. Additionally, based on a consideration of the surrounding circumstances, Trooper Demberger's actions were tailored to render assistance to Ward. Upon approaching Ward, Trooper Demberger inquired whether he was okay, and Ward "admit[ted] that he was throwing up, and he was sweating profusely." *Id.* at 9. While Ward notes that Trooper Demberger "offered no actual assistance to [Ward] beyond inquiry," he fails to explain how the failure to do so invalidates the applicability of the public servant exception. Ward's Br. at 22. We therefore affirm the order denying Ward's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>6/28/2024</u>