J-A20025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALAN JAMES BOATES | : | |
| | : | |
| Appellant | : | No. 2961 EDA 2024 |

Appeal from the Judgment of Sentence Entered October 2, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0002102-2023

BEFORE: MURRAY, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.: **FILED NOVEMBER 13, 2025**

Alan James Boates appeals from his conviction for driving under the influence of alcohol or controlled substance (combination of drugs and alcohol) ("DUI"). 75 Pa.C.S.A. § 3802(d)(3). He challenges the trial court's denial of his motion to suppress. We affirm.

In November 2022, Boates was arrested and charged with DUI, and in September 2023, he moved to suppress. Following a hearing, the trial court made the following findings of fact:

> 3. At the hearing, the Commonwealth presented the testimony of Officer Mikel Jones, who testified as follows:
>
> i. Officer Jones is a member of the Aston Township Police Department and has been in law enforcement for 21 years.

_____

[*] Retired Senior Judge assigned to the Superior Court.

ii. On November 25, 2022, at 7:40 P.M. he was dispatched to Tom's Pizza on Concord Road for the report of a fight inside the establishment.

iii. Upon arrival, Officer Jones came in contact with the owners of the pizza place, Nick and Pete, who he was familiar with. They told him they had called about the fight and said . . . Boates was involved and had a knife. They advised Officer Jones that [Boates] had gone out the rear of the pizza parlor.

iv. That night, Officer [Derek] Klinger and Officer [Michael] Wiley were assisting Officer Jones.

v. Officer Jones relayed the information provided by the owners to Officer Klinger via private radio channel. [Officer] Klinger was in a separate squad car at the rear of the pizza parlor. He conducted a stop of a vehicle that had been seen leaving the rear parking lot.

vi. Officer Jones met up with Officer Klinger shortly after he had stopped [Boates'] vehicle, a mere 200 yards from the parking lot of Tom's Pizza.

vii. When he approached the stopped vehicle, Officer Klinger had [Boates] out of his vehicle and was conducting an investigation regarding the fight at Tom's Pizza.

viii. Officer Jones had received a video of the fight that occurred at Tom's from someone who recorded it and uploaded it to him on evidence.com. Officer Jones knew what [Boates] looked like prior to this incident as he knew [Boates] owned a construction company in the area. He was able to identify [Boates] on the video of the fight.

ix. While the officers were interviewing [Boates] about the fight, [Boates] was belligerent, uncooperative, and showing signs of intoxication.

x. There had been a prior call about a fight at Tom's Pizza prior that day as well, which was relayed to Officer Jones from the day shift officers.

4. The Commonwealth also presented the testimony of Officer Derek Klinger who testified as follows:

i. Officer Klinger is a member of Aston Township Police Department and had conducted or been involved with approximately 12 to 15 DUI arrests at the time this incident occurred.

ii. Officer Klinger was second to arrive at the scene of Tom's Pizza on November 25, 2022. When he arrived, there were people outside, including the owner, who said the group involved in the fight moved to the rear.[1]

iii. [Officer] Klinger went to the rear of the establishment and observed a gray Chevy Tahoe exiting the parking lot. There was no other foot traffic in the area.

iv. At the time, Officer Klinger was receiving real time updates on the private radio channel from Officer Jones, as Jones received updates from the bystanders out front and other officers.

v. Officer Klinger, stopped the vehicle approximately two blocks from Tom's Pizza. He stopped the vehicle to determine if the people in the vehicle were those involved in the fight.

vi. When he approached the vehicle, [Boates] was in the driver's seat and a man named Jeffrey Knight was in the passenger's seat. Officer Klinger advised them he was investigating a fight at Tom's Pizza.

vii. The officer observed indicia of intoxication and asked [Boates] to step out of the vehicle. He then confirmed that [Boates] had bloodshot eyes, slurred speech, and alcohol on his breath.

viii. During the investigation, [Boates] was not cooperative, and denied involvement in the fight, but admitted to drinking some beers at Tom's.

ix. In real time, Officer Klinger received radio information from Officer Wiley that the name of the person involved in the fight was Alan Boates.

---

[1] Officer Klinger stated that the officers arrived within five minutes of receiving the call about a fight at Tom's Bar. N.T., Mar. 21, 2024, at 45-46; N.T., Apr. 28, 2023, at 14.

5. The Commonwealth also introduced into evidence the video of the fight at Tom's Pizza (C1) as well as the bodycam footage of the vehicle stop (C-2). [During the encounter from the body camera, Boates stated "You pulled me over because apparently you thought I was drunk." N.T., Mar, 21, 2024, at 48.][2]

Trial Court Opinion, filed Apr. 30, 2024, at 1-4 (internal citations omitted).

The court denied the motion to suppress. Boates filed a motion to reconsider, which the court denied. Following a bench trial, the court found Boates guilty of DUI. The court sentenced Boates to six months' probation with 15 days on electronic home monitoring. Boates filed a timely appeal.

Boates raises the following issues:

I. Whether the trial court committed reversible error in denying [Boates'] Motion to Suppress, when it concluded that the arresting officer had sufficient reasonable suspicion to conduct an investigatory detention of [Boates]?

II. Whether the trial court committed reversible error in denying [Boates'] Motion to Suppress, when it concluded that the arresting officer had reasonable suspicion to extend the investigatory detention of [Boates] by removing him from the vehicle?

Boates's Br. at 4-5 (trial court answers omitted).

The "standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Lowrey*, 333 A.3d 440, 443 (Pa.Super. 2025) (citation omitted). Our review is limited to

---

[2] The recordings are not part of the certified record. However, the transcript of the suppression hearing includes the words exchanged during the encounter captured from the body camera. N.T., Mar. 21, 2024, at 41-49.

examining the Commonwealth's evidence at the suppression hearing and so much of the defense evidence as remains uncontradicted. **See Commonwealth v. Rosendary**, 313 A.3d 236, 240 (Pa.Super. 2024).

"The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect against unreasonable searches and seizures." **Commonwealth v. Ward**, 318 A.3d 410, 414 (Pa.Super. 2024). One form of seizure is an investigative detention, which "carries an official compulsion to stop and respond." **Commonwealth v. Jefferson**, 256 A.3d 1242, 1248 (Pa.Super. 2021) (*en banc*) (citation omitted). An investigative detention requires that an officer have "reasonable suspicion that the person seized is then engaged in unlawful activity." **Commonwealth v. Beasley**, 761 A.2d 621, 625 (Pa.Super. 2000). "In determining whether police had reasonable suspicion to initiate an investigative detention, the fundamental inquiry is an objective one, namely, whether the facts available to police at the moment of the intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate." **Jefferson**, 256 A.3d at 1248 (citation and internal quotations omitted).

Boates first argues the trial court erred in denying his motion to suppress because the arresting officer did not have reasonable suspicion to conduct an investigative detention by stopping the vehicle. He attempts to distinguish **Commonwealth v. Leonard**, 951 A.2d 393, 397 (Pa.Super. 2008), where this Court found that an officer had reasonable suspicion to stop

the defendant. There, the officer had received an anonymous tip of a fight near a bar; saw a large group of men and observed a fight developing; saw two individuals run away from the reported area of the fight and toward the bar, as another officer approached them; heard car doors slam near the bar; and moments later saw a car emerge from the vicinity of the bar. Boates argues that here, there was no reasonable suspicion because Officer Klinger did not witness any people at the scene. He further maintains Officer Klinger did not have any identifying information, and instead relied on a hunch given the vehicle's location. Boates points out that Officer Klinger did not receive the communication informing him that Boates had been involved until after he stopped the vehicle.

The trial court concluded the police officers had reasonable suspicion to stop and investigate Boates's vehicle. Trial Ct. Op. at 6. It pointed out the officers received a call about a fight with a knife involved, witnesses said the perpetrators had gone to the rear of the building, and Officer Klinger observed Boates's vehicle leaving the parking lot that was located at the rear of the building. *Id.* The court noted that Officer Klinger did not see anyone else near the rear parking lot. *Id.*

The record supports the trial court's factual findings and it did not abuse its discretion in finding Officer Klinger had reasonable suspicion to stop the vehicle. Officer Klinger knew that witnesses saw the participants from the fight go to the rear of the establishment and, when Officer Klinger arrived at the

- 6 -

rear parking lot, there were no pedestrians and the only vehicle he observed was Boates's vehicle. *See Leonard*, 951 A.2d at 397.

Boates next contends that the officers did not have reasonable suspicion to extend the traffic stop by removing Boates from the vehicle. He asserts that the stop's purpose to inquire whether the driver was involved in a fight ended when Boates said he was not involved. Boates argues that, because Officer Klinger had not yet received the identifying information through the private channel, the request for Boates to step out of the vehicle went beyond the investigatory detention's purpose. He asserts that the officers observed the signs of intoxication after they removed him from the vehicle.

The Commonwealth argues Boates waived this claim because Boates did not raise it "in his motion to suppress, at the suppression hearing, in defendant's post-hearing brief, or in his motion to reconsider." Commonwealth's Br. at 17. We agree that Boates did not raise the claim in his motion to suppress or his motion to reconsider the order denying the motion to suppress. He also did not raise it in the memorandum filed in support of the motion, which was filed after the hearing. There, Boates raised one issue—"Did Officer Klinger possess reasonable suspicion to subject Mr. Alan Boates to investigatory detention?"—and the memorandum focused on whether Officer Klinger had reasonable suspicion to conduct the traffic stop. Defendant's Memorandum in Support of Motion to Suppress Evidence, filed Apr. 19, 2024, at 1, 4-5 (unpaginated).

At best, Boates arguably raised the claim orally at the suppression hearing. His counsel argued at the hearing that the police officers did not have reasonable suspicion to initiate the traffic stop and that when the police ordered him from the vehicle it became a "seizure of his person," which he alleged was not supported by probable cause. N.T, Mar. 21, 2024, at 4. Counsel stated that "it's [Boates's] position that the case begins and ends on the stop and then removing him from the vehicle as far as suppression is concerned." *Id.*

Even assuming for the sake of argument that this was sufficient to preserve the issue, it lacks substantive merit. During the encounter Boates was uncooperative and defiant, he smelled of alcohol, had bloodshot eyes and slurred speech, and he admitted that he had been drinking. Trial Ct. Op. at 4, 6-7; N.T., Mar. 21, 2024, at 39. We further note that Officer Klinger observed the intoxication signs while Boates was seated in the vehicle. Trial Ct. Op. at 4; N.T., Mar. 21, 2024, at 39, 66. Based on the totality of the circumstances, the officers had reasonable suspicion that Boates was driving while under the influence of alcohol and therefore lawfully detained him.[3] *Commonwealth v. Clark*, 2024 WL 3718164, at *3 (Pa.Super. filed Aug. 8, 2024) (unpublished memorandum) (finding reasonable suspicion of DUI sufficient to detain driver for field sobriety tests where driver's eyes were red, bloodshot, teary, and

---

[3] Although Officer Jones provided Officers Klinger and Wiley real time updates of the investigation, including that Boates was involved in the fight, Officer Klinger did not receive the identifying information until after he ordered Boates from the vehicle. N.T., Mar. 21, 2024, at 44, 50.

glassy, and driver showed confusion and slowed, slurred speech); **Commonwealth v. Sloan**, 303 A.3d 155, 166 (Pa.Super. 2023) (finding before initial stop's purpose had been fulfilled reasonable suspicion arose to permit officer to investigate suspicions of DUI, where officer smelled burnt marijuana, the officer noticed driver had slow and slurred speech and red, bloodshot, teary and glossy eyes); **Commonwealth v. Angel**, 946 A.2d 115, 118 (Pa.Super. 2008) (concluding that probable cause to arrest defendant for DUI existed where defendant had odor of alcohol, slurred speech, and glassy eyes).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/13/2025