J-S40037-25

2025 PA Super 286

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
KEVIN SAMUEL ROSARIO : No. 360 MDA 2025

Appeal from the Order Entered February 18, 2025
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0000388-2024

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

OPINION BY MURRAY, J.: **FILED: DECEMBER 23, 2025**

The Commonwealth appeals from the order granting Kevin Samuel

Rosario's (Defendant) motion to suppress evidence seized from Defendant and

his vehicle following a traffic stop.[1] After careful review, we affirm.

Based upon the evidence presented at the suppression hearing, the

suppression court made the following factual findings:

> On December 29, 2023, Swatara Township Police Officer Anthony
> Glass [(Officer Glass)] … initiated [a] traffic stop [of Defendant's
> vehicle] at 10:45 a.m. on Interstate 83 North[ (I-83),] south of
> the exit to Union Deposit and north of the ramp from Derry Street.
> N.T., 7/10/24, at 7, 11.
>
> Officer Glass testified that he first observed Defendant's
> Dodge Durango in the parking lot of Howard Johnson's. *Id.* at 21.
> When [Officer Glass] observed Defendant's vehicle, he noted its
> excessive window tint on the driver and front passenger windows.

---

[1] The Commonwealth has properly certified that the order "will terminate or
substantially handicap the prosecution[.]" Notice of Appeal, 3/18/25 (citing
Pa.R.A.P. 311(d)).

*Id.* at 12, 17-18. Officer Glass'[s] suspicion was heightened by the fact that he knew the parking lot of the Howard Johnson's in Swatara Township as a high drug area. *Id.* at 21-22. [Officer Glass] followed [Defendant's] vehicle as it neared the Eisenhower interchange, [and he] smelled an overpowering odor of marijuana[,] such that the odor came into the patrol vehicle. *Id.* at 13-14. Officer Glass pulled Defendant's vehicle over. *Id.* at 14-15. He approached the vehicle on the passenger side. *Id.* at 15. The [front] passenger side window was open. *Id.* The odor intensified as Officer Glass approached the side of the vehicle. *Id.* He concluded that the odor [he] detected as he followed the vehicle was related to the odor [he detected] as he approached the side of the vehicle. *Id.*

[Defendant was the vehicle's sole occupant.] Officer Glass requested Defendant's driver's license and registration. *Id.* Officer Glass observed that Defendant exhibited very nervous behavior from the start of the interaction. *Id.* at 20. … As he spoke to the officer, Defendant's voice quivered and his hands shook. *Id.* at 24. Officer Glass returned to his vehicle to conduct a records review, which included a criminal history check. *Id.* at 20-21. He determined that Defendant had [previous] contacts with the criminal justice system in Officer Glass'[s] jurisdiction. *Id.* at 21.[2]

Officer Glass re-approached Defendant's vehicle and requested that Defendant exit the vehicle. *Id.* at 22-23. Defendant initially stated that he would not get out of the [vehicle]. *Id.* at 23. Defendant complied after the officer reached into the vehicle to unlock it. *Id.*

Defendant argued with Officer Glass when [the officer] asked Defendant if he had any weapons on his person and if [the officer] could pat him down. *Id.* at 26. Defendant became defensive and took a half step back, which indicated to Officer Glass that [Defendant] did not want to be searched. *Id.* Based upon [his] observation of Defendant's nervous behavior, the

---

[2] Officer Glass's testimony did not specify the nature of Defendant's criminal history. *See* N.T., 7/10/24, at 21, 42. In the Affidavit of Probable Cause supporting his application for a warrant to search Defendant's vehicle, Officer Glass averred that Defendant "had previous drug and gun charges," but did not indicate whether those charges resulted in convictions. Affidavit of Probable Cause, 12/29/23, at 1.

information in the criminal history check, and Defendant's initial refusal to exit the vehicle, Officer Glass [decided to pat down] Defendant for weapons. *Id.* at 23-24. Officer [Glass] testified that in his experience, having stopped hundreds of vehicles for Motor Vehicle Code violations, nervousness alone would not lead him to determine the need for a pat-down, but rather, would be a factor among others, including a prior criminal record. *Id.* at 25-26. Officer Glass conducted an open-hand pat down. *Id.* at 28. He felt objects in one of Defendant's pockets. *Id.* at 27. Defendant removed his wallet and keys. *Id.* Officer Glass did not touch them[, and] Defendant returned them to his pocket. *Id.* at 27-28.

[Officer Glass] detained Defendant to continue with a drug investigation. *Id.* at 29, 43-44. Officer Glass told Defendant about the smell of marijuana. *Id.* at 29. He [asked] Defendant if he possessed a medical marijuana card. *Id.* Defendant stated that he did, and provided [his medical marijuana card] to Officer Glass. *Id.* at 30. Officer Glass apprised Defendant of the options of [Defendant consenting to a search of his vehicle] or having the vehicle impounded and [the officer applying] for a search warrant. *Id.* at 31. Defendant denied consent to search his vehicle. *Id.* Officer Glass called a tow truck and told [the towing service] that the vehicle would be impounded and that he would apply for a search warrant. *Id.* at 32. Officer Glass told Defendant that he intended to apply for a search warrant of the [vehicle]. *Id.* at 34. Officer Glass asked Defendant if he possessed any contraband on his person, and [stated] that if [Officer Glass] could verify that [Defendant] did not, [Defendant] would be free to leave. *Id.* at 44. Officer Glass searched Defendant's person and recovered a cell phone and cash. Officer Glass told Defendant he was free to leave. *Id.*

Memorandum Opinion, 2/18/25, at 1-4 (record citations modified; original footnotes omitted; footnotes added).

Officer Glass agreed that he had already decided to impound Defendant's vehicle before this search of Defendant's person took place. N.T., 7/10/24, at 51. Officer Glass testified that Defendant had a smartphone in his vehicle. *Id.* at 44, 51. Upon searching Defendant's person, Officer Glass

discovered a second cell phone, "a small flip phone." *Id.* at 51. Officer Glass also discovered that Defendant had $1,000 in cash on his person. *Id.* at 44. Officer Glass seized the cash, but returned the cell phone to Defendant. *Id.* at 45.

After Officer Glass told Defendant he was free to leave, "[t]he vehicle was towed pending approval of the search warrant." Memorandum Opinion, 2/18/25, at 4 (citing Stipulated Exhibit 1 (Officer Glass's Body-Worn Camera Footage)). "Police waited with Defendant at the roadside as he arranged for someone to pick him up. Police did not arrest Defendant." *Id.*

Shortly thereafter, Officer Glass applied for a search warrant, and a magisterial district judge granted the application. *Id.* at 2.[3] Later the same day, at 1:35 p.m., police executed the warrant on Defendant's vehicle at the Swatara Township Police impound garage. *See* Search Warrant Application, 12/29/23, at 1; Return of Service and Inventory, 12/29/23. Upon searching the vehicle, police recovered a bag of crack cocaine, a bag of marijuana, a black fanny pack containing drug paraphernalia, and $200 in cash. Memorandum Opinion, 2/18/25, at 4 (citing Receipt/Inventory of Seized Property, 12/29/23).

---

[3] In the Affidavit of Probable Cause, Officer Glass averred that Defendant's possession of two cell phones and "a large sum of unexplained cash" contributed to his belief "that there is marijuana and related paraphernalia in the vehicle…." Affidavit of Probable Cause, 12/29/23, at 2. Officer Glass further averred that, based on his training and experience, drug traffickers often carry two or more cell phones and large amounts of cash. *Id.* at 1-2.

The Commonwealth subsequently charged Defendant with possession with intent to deliver a controlled substance, possession of marijuana, and possession of drug paraphernalia.[4]  On April 19, 2024, Defendant filed an omnibus pretrial motion, which included a motion to suppress evidence. Defendant argued Officer Glass's search of his person, which revealed the second cell phone and cash, was unlawful.  He further argued Officer Glass unlawfully seized Defendant's vehicle when he decided to impound it pending his application for a search warrant.  Finally, Defendant argued the search warrant was unsupported by probable cause.

On July 7, 2024, the suppression court held a hearing, at which Officer Glass testified as the only witness.  The parties stipulated to the admission of Officer Glass's body-worn camera footage.  **Before the suppression court, the Commonwealth conceded that Officer Glass's search of Defendant's person was unlawful, and agreed that evidence of the second cell phone and $1,000 cash should be suppressed.**  N.T., 7/10/24, at 5; *see also* Commonwealth Brief at 6 n.1, 13 (same).  Following the hearing, the parties filed proposed findings of fact and conclusions of law.

On February 18, 2025, the suppression court filed a memorandum opinion and order granting Defendant's suppression motion.  The suppression

---

[4] 35 P.S. §§ 780-113(a)(30), (31), (32).

court relied on *Commonwealth v. Holzer*, 389 A.2d 101 (Pa. 1978), in which

our Supreme Court held that

> [i]t is reasonable, … for constitutional purposes, for police to seize and hold a car until a search warrant can be obtained, **where the seizure occurs after the user or owner has been placed into custody**, where the vehicle is located on public property, **and** where there exists probable cause to believe that evidence of the commission of a crime will be obtained from the vehicle.

*Holzer*, 389 A.2d at 106 (emphasis added).  Interpreting the three

"requirements set forth in *Holzer* as conjunctive," the suppression court

determined that "[*b*]*ecause Defendant was not in custody*, the towing of his

vehicle before issuance of the search warrant constituted an unlawful seizure."

*Id.* at 5 (emphasis in original).

The Commonwealth timely appealed and filed a court-ordered concise

statement of matters complained of on appeal under Pa.R.A.P. 1925(b).  The

suppression court filed an additional opinion under Rule 1925(a).  The

Commonwealth presents the following issue for our review:

> Whether the trial court erred in excluding the evidence discovered during a search of [Defendant] and his vehicle where:
>
> (1) police properly seized, towed, and impounded [Defendant's] vehicle while applying for a search warrant pursuant to 75 Pa.C.S.[A.] § 3352 and the community caretaking function[,] as the vehicle posed a legitimate safety concern and potentially impeded traffic and the stopping other vehicles [*sic*];
>
> (2) an arrest was not required in such a circumstance where police had probable cause to believe that [Defendant] was not able to operate his vehicle due to driving under the

influence [(DUI)], but permitted him to leave rather than arresting him; and

(3) the evidence was obtained through an independent source and would have inevitably been discovered.

Commonwealth Brief at 4.[5]

We review suppression court orders

to determine whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record. In reviewing an appeal by the Commonwealth of a suppression order, we may consider only the evidence from the [defendant's] witnesses along with the Commonwealth's evidence which remains uncontroverted. Our scope of review of suppression court factual findings is limited to the suppression hearing record. We, however, are not bound by a suppression court's conclusions of law; rather, when reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Anderson*, 276 A.3d 282, 292 (Pa. Super. 2022) (*en banc*) (quoting *Commonwealth v. Barr*, 266 A.3d 25, 39 (Pa. 2021)); *see also Commonwealth v. Kuhlman*, 300 A.3d 460, 464 (Pa. Super. 2023) (the appellate court's duty "is to determine if the suppression court properly applied the law to the facts."). "At a suppression hearing, the Commonwealth has the burden of establishing by a preponderance of the evidence that the

---

[5] Though not identified in its statement of the question presented, the Commonwealth additionally argues that the search warrant issued for Defendant's vehicle was supported by probable cause. *See* Commonwealth Brief at 9-14; *see also* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). The suppression court never reached this issue and, in light of our disposition, neither do we. *See* Rule 1925(a) Opinion, 6/6/25, at 5 (declining to reach probable cause issue).

evidence was properly obtained." ***Commonwealth v. Heidelberg***, 267 A.3d 492, 498 (Pa. Super. 2021) (*en banc*) (citation and quotation marks omitted); ***see also*** Pa.R.Crim.P. 581(H).

> "[T]he Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution prohibit unreasonable searches and seizures." ***Commonwealth v. Jones-Williams***, 279 A.3d 508, 515 (Pa. 2022). "Protection of reasonable expectations of privacy is the primary purpose of the prohibition against unreasonable searches and seizures." ***Holzer***, 389 A.2d at 106 n.6. "A search or seizure conducted without a warrant 'is presumptively unreasonable … subject to a few specifically established, well-delineated exceptions.'" ***Interest of T.W.***, 261 A.3d 409, 416 (Pa. 2021) (quoting ***Commonwealth v. Chase***, 960 A.2d 108, 113 (Pa. 2008)).

***Commonwealth v. Saunders***, 326 A.3d 888, 896 (Pa. 2024) (citations modified; footnote omitted).

In ***Commonwealth v. Alexander***, 243 A.3d 177, 181 (Pa. 2020), our Supreme Court held "that Article I, Section 8 affords greater protection to our citizens than the Fourth Amendment[.]" ***Alexander***, 243 A.3d at 181. The ***Alexander*** Court

> rejected the federal automobile exception, and reasserted that "the Pennsylvania Constitution requires both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile." [***Id.***] Under ***Alexander***, "[o]btaining a warrant is the default rule. If an officer proceeds to conduct a warrantless search, a reviewing court will be required to determine whether exigent circumstances existed to justify the officer's judgment that obtaining a warrant was **not** reasonably practicable." [***Id.*** at 208] (emphasis in original).

***Commonwealth v. Camacho***, 325 A.3d 685, 689-90 (Pa. Super. 2024); ***see also Alexander***, 243 A.3d at 207 (recognizing a "a limited automobile

exception under Article I, Section 8 of our Constitution, pursuant to which warrantless vehicle searches require both probable cause and exigent circumstances; one without the other is insufficient." (quotation marks and citation omitted)).

> "Exigent circumstances arise where the need for prompt police action is imperative, either because evidence is likely to be destroyed, or because there exists a threat of physical harm to police officers or other innocent individuals." [**Commonwealth v.**] **Stewart**, 740 A.2d [712,] 717 [(Pa. Super. 1999)] (quotation omitted). When evaluating whether there are exigent circumstances which justify a warrantless search, "a court must balance the individual's right to be free from unreasonable intrusions against the interest of society in quickly and adequately investigating crime and preventing the destruction of evidence." **Id.** …

> [In **Holzer**,] our Supreme Court, in explaining the rationale for excusing the warrant requirement for an automobile under exigent circumstances, stated its reasons as two-fold: "First, a vehicle is highly mobile and the likelihood is therefore great that it and its contents may never be found if police were prohibited from immobilizing it until a warrant can be secured…. Second, one's expectation of privacy with respect to an automobile is significantly less than that relating to one's home or office." [**Holzer**], 389 A.2d [at 106] (internal citations omitted). More importantly, the **Holzer** Court recognized that "where a warrantless seizure of the automobile follows arrest of its owner or driver, the intrusion into that person's privacy interest is even less offensive; since the person is to be taken into custody, he or she will suffer minimal further inconvenience from the temporary immobilization of the vehicle." **Id.**

> As such, the [**Holzer**] Court … opined that:

>> It is reasonable, therefore, for constitutional purposes for police to seize and hold a car until a search warrant can be obtained where the seizure occurs after the user or owner has been placed into custody, where the vehicle is located on public property, and where there exists probable cause to believe that evidence

> of the commission of a crime will be obtained from the vehicle.

*Id.* [at 106] (citations omitted).

*Commonwealth v. Griffin*, 24 A.3d 1037, 1042-43 (Pa. Super. 2011).

In *Commonwealth v. Joseph*, 34 A.3d 855 (Pa. Super. 2011), we observed that,

> [p]ursuant to Pennsylvania's "limited automobile exception," warrantless vehicle searches and/or seizures must be accompanied by both probable cause **and exigent circumstances beyond the mere mobility of the vehicle. Where probable cause and exigent circumstances exist, police may either search the vehicle without a warrant or immobilize it until a search warrant may be obtained**.  As our Supreme Court made clear in *Commonwealth v. Milyak*, 493 A.2d 1346 (Pa. 1985), **immobilizing a vehicle while applying for a search warrant is no different, from a constitutional perspective, than conducting a warrantless search**.  In *Milyak*, our Supreme Court stated that:
>
>> ….
>>
>> For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant….
>
> *Milyak*, 493 A.2d at 1350 (quoting *Chambers v. Maroney*, 399 U.S. 42, 52 (1985)).
>
>> ….
>
> [T]he "detention," *i.e.*, the immobilization, of a vehicle pending the filing of an application for a search warrant unquestionably constitute[s] a seizure of the vehicle under the Fourth Amendment.  … [A]s explained above, **Pennsylvania's limited automobile exception requires probable cause <u>and</u> exigent circumstances for a warrantless seizure**….

- 10 -

*Joseph*, 34 A.3d at 860-61 (some citations omitted; citations modified; emphasis added).

Instantly, we consider the Commonwealth's first and second sub-issues together, as they are related. The Commonwealth argues "Officer Glass's removal of [D]efendant's vehicle was permissible because Officer Glass was empowered by statute to do so in connection with the traditional caretaking functions of the police." Commonwealth Brief at 17. The Commonwealth relies on section 3352 of the Vehicle Code, which, it asserts, is "derived from the traditional caretaking function of the police which has allowed police to tow cars, prior to statute, in situations where the cars presented some manner of hazard to the public or where the car might impact on the movement of traffic." *Id.* (quoting *Commonwealth v. Floyd*, 313 A.3d 1061, 1067-68 (Pa. Super. 2024)).

Section 3352 provides, in part, as follows:

**(a) Outside business and residence districts.**--Whenever any police officer finds a vehicle in violation of any of the provisions of section 3351 (relating to stopping, standing and parking outside business and residence districts), the officer may move the vehicle, or cause the vehicle to be moved, or require the driver or other person in charge of the vehicle to move the vehicle, to a position off the roadway where the vehicle will not interfere unduly with the normal movement of traffic or constitute a safety hazard.

**(b) Unattended vehicle obstructing traffic.**--Any police officer may remove or cause to be removed to a place of safety any unattended vehicle illegally left standing upon any highway, bridge, causeway or in any tunnel, in such position or under such circumstances as to interfere unduly with the normal movement of traffic or constitute a safety hazard.

**(c) Removal to garage or place of safety.**--Any police officer may remove or cause to be removed to the place of business of the operator of a wrecker or to a nearby garage or other place of safety any vehicle found upon a highway under any of the following circumstances:

(1) Report has been made that the vehicle has been stolen or taken without the consent of its owner.

(2) The person or persons in charge of the vehicle are physically unable to provide for the custody or removal of the vehicle.

(3) The person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before an issuing authority without unnecessary delay.

**(4) The vehicle is in violation of section 3353 (relating to prohibitions in specified places) except for overtime parking.**

(5) The vehicle has been abandoned as defined in this title. The officer shall comply with the provisions of Chapter 73 (relating to abandoned vehicles and cargos).

75 Pa.C.S.A. § 3352 (emphasis added).

Specifically, the Commonwealth asserts Officer Glass was empowered to remove Defendant's vehicle under section 3352(c)(4), contending the vehicle was in violation of section 3353(a)(2)(vii). Commonwealth Brief at 14. Section 3353(a)(2)(vii) provides as follows:

**(a) General rule.**--Except when necessary to avoid conflict with other traffic or to protect the safety of any person or vehicle or in compliance with law or the directions of a police officer or official traffic-control device, no person shall:

\* \* \*

(2) Stand or park a vehicle:

\* \* \*

- 12 -

> > (vii) On a limited access highway unless authorized by official traffic-control devices.

75 Pa.C.S.A. § 3353(a)(2)(vii).[6]

The Commonwealth relies on Officer Glass's testimony that the traffic stop occurred "along a limited access highway" that "is one of the busiest roadways in our township.  There's always a high volume … of traffic along I-83 during the day."  Commonwealth Brief at 14-15 (quoting N.T., 7/10/24, at 8).  The Commonwealth argues Defendant's vehicle

> was parked on the shoulder of the on[-]ramp for a limited access highway.  [D]efendant's car being parked at this location had the potential to "impact … the movement of traffic" on a busy highway with traffic merging at that spot.  [**Floyd**, 313 A.3d at 1061.]  Further, Officer Glass, or another officer, would have had to remain on scene to secure the vehicle pending the issuance of the warrant.  This means that officers would be forced to remain on the shoulder of a busy highway with all manner of vehicles traveling by them on a multi-lane highway at high rates of speed for an even longer amount of time.  This presents obvious safety concerns for the officer and for [D]efendant's property.

Commonwealth Brief at 17.

The Commonwealth further argues that Officer Glass lawfully prevented Defendant from driving his vehicle away from the scene based on "the possibility that [Defendant] had consumed marijuana," where Officer Glass "used his discretion" in choosing "not to pursue [a DUI] investigation" and

---

[6] We observe that the Commonwealth's argument is limited to section 3352(c)(4) and section 3353(a)(2)(vii).  **See** Commonwealth Brief at 14.  It does not argue that police had authority to impound Defendant's vehicle under section 3352(b), (c)(2), or (c)(3).  **See** Defendant's Brief at 11-12 (arguing section 3352(c)(2) and (3) do not apply here).

"instead opt[ed] to release [D]efendant from the scene without allowing him to operate the vehicle further." ***Id.*** at 9-10 (citing N.T., 7/10/24, at 36-38). The Commonwealth contends Defendant's inability to operate the vehicle meant "the vehicle would now be left to stand or park on the side of I-83," and thus supported Officer Glass's authority to have it towed. ***Id.*** at 16. The Commonwealth further asserts that, under these circumstances, the police were not required to arrest Defendant to proceed with the seizure of his vehicle. ***Id.*** at 9.

Defendant counters that section 3352(c)(4) did not apply here because Defendant's vehicle was not in violation of section 3353(a)(2)(vii). Defendant's Brief at 11-13. Defendant emphasizes that section 3353(a) provides a specific exception for a person who parks a vehicle "in compliance with … the directions of a police officer…." ***Id.*** at 12 (quoting 75 Pa.C.S.A. § 3353(a)). Defendant argues he "pulled over as directed by police." ***Id.*** Noting he "was not under arrest" and was "free to leave," Defendant maintains he was able "to provide for the removal of the vehicle" from the scene. ***Id.*** Defendant asserts police cannot use sections 3352 and 3353 to seize a vehicle without a warrant simply because "they chose to pull the [vehicle] over in a limited access highway area." ***Id.*** Defendant further asserts the suppression court's factual findings contradict the Commonwealth's contention that Defendant's vehicle was stopped in a hazardous location. ***Id.*** at 13 n.3.

Defendant maintains "[t]here is no dispute that [Defendant] was never placed in custody or arrested," and this fact alone, "under **Holzer**, **supra**, warrants affirmance." **Id.** at 10. Defendant argues the Commonwealth "attempts to overcome this critical fact by misleadingly asserting that police exercised discretion in not arresting" Defendant for DUI. **Id.** Defendant asserts police could not have arrested him for DUI, noting Officer Glass testified he did not pursue a DUI investigation. **Id.** According to Defendant, even if he was unable to drive the vehicle, he was not under arrest and could have provided for another person to remove the vehicle. **Id.** at 10-11.

In addition to the specific circumstances set forth in section 3352, the police may legally tow a vehicle pursuant to "the traditional caretaking role of police." **Commonwealth v. Bailey**, 986 A.2d 860, 863 (Pa. Super. 2009). This Court recently explained that

> [t]he community caretaking doctrine embodies three exceptions [to the warrant requirement for a seizure]: "the emergency aid exception; the automobile impoundment/inventory exception; and the public servant exception, also sometimes referred to as the public safety exception." [**Commonwealth v. Livingstone**, 174 A.3d 609, 626-27 (Pa. 2017) (plurality)]. The **Livingstone** Court explained that "for a seizure to be justified under the public servant exception,"
>
>> [(1)] the officer must point to specific, objective, and articulable facts which would reasonably suggest to an experienced officer that assistance was needed; [(2)] the police action must be independent from the detection, investigation, and acquisition of criminal evidence; and, [(3)] based on a consideration of the surrounding circumstances, the action taken by police must be tailored to rendering assistance or mitigating the peril. Once assistance has been provided or the

- 15 -

> peril mitigated, further police action will be evaluated under traditional Fourth Amendment jurisprudence.
>
> *Id.* at 637. The actions by the police should be "motivated by a desire to render aid or assistance, rather than the investigation of criminal activity" and "the level of intrusion must be commensurate with the perceived need for assistance." *Id.* at 627, 637. Furthermore, "when the community caretaking exception is involved to validate a search or seizure, courts must meticulously consider the facts and carefully apply the exception in a manner that mitigates the risk of abuse." *Id.* at 637 (citation omitted).

*Commonwealth v. Ward*, 318 A.3d 410, 414-15 (Pa. Super. 2024).

Instantly, the suppression court determined "neither the traditional caretaking function nor the … statutory power [set forth in section 3352(c)(4)] apply here." Rule 1925(a) Opinion, 6/6/25, at 4. The court found that

> [n]o facts exist upon which we could conclude that Defendant's vehicle would have impacted the movement of traffic had officers remained with the vehicle pending issuance of the warrant. Officer Glass testified that after following Defendant's vehicle, he chose the location of the stop for his safety and that of Defendant. [N.T., 7/10/24, at 14]. The body-worn camera footage reflects that Defendant's vehicle did not block traffic and was operable. Assisting officers responded to the location and parked on the same berm. [*See* Stipulated Exhibit 1.] The tow[ truck] loaded Defendant's vehicle without blocking traffic.

*Id.* (footnote omitted). The suppression court noted Officer Glass's testimony that he chose not to investigate Defendant for DUI. *Id.* at 5 (citing N.T., 7/10/24, at 37). The court further noted "police did not arrest Defendant," but nevertheless "separated Defendant from access to his vehicle and required that he arrange for a ride at the conclusion of the encounter." *Id.*

Our review of the suppression hearing transcript and body-worn camera footage confirms that the suppression court's factual findings are supported by the record. We agree with the suppression court's determination that Officer Glass's seizure of Defendant's vehicle was not authorized by either section 3352(c)(4) or the police's traditional caretaking function. Section 3352(c)(4) requires a violation of section 3353, and section 3353(a) specifically excepts persons who park "in compliance with … the directions of a police officer," 75 Pa.C.S.A. § 3353(a), as Defendant did here. Though the Commonwealth asserts Defendant's vehicle was parked in a hazardous location requiring removal for safety concerns, the suppression court found it was not, and the record supports this finding. As discussed more fully below, our review of the record further confirms that Officer Glass's towing of the vehicle was not "motivated by a desire to render aid or assistance," but rather by a desire to "investigat[e] … criminal activity." *Ward*, 318 A.3d at 415 (quoting *Livingstone*, 174 A.3d at 637).

To the extent the Commonwealth's argument under sections 3352 and 3353 depends on Defendant's alleged inability to drive the vehicle away from the scene, the argument fails for lack of record support. Apart from its observation that Officer Glass testified he chose not to investigate Defendant for DUI, the suppression court did not address the Commonwealth's contention that Officer Glass prevented Defendant from driving the vehicle due to suspicion of DUI. *See* Rule 1925(a) Opinion, 6/6/25, at 5 (citing N.T.,

7/10/24, at 37). Nevertheless, our review discloses the contention is unsupported by anything in the record before the suppression court.

The Commonwealth asserts, "Officer Glass testified that he was not going to allow [D]efendant to drive the vehicle away from the scene due to the possibility that he had consumed marijuana…." Commonwealth Brief at 15 (citing N.T., 7/10/24, at 36-38). However, the cited transcript pages do not support the Commonwealth's characterization of Officer Glass's testimony. *See* N.T., 7/10/24, at 36-38. Though Officer Glass suggested the DUI statute "might have been in play," *id.* at 37, he never testified that Defendant exhibited signs of intoxication, and never suggested that Defendant's possible intoxication was the reason he prevented Defendant from driving away. *See generally id.*

To the contrary, during the traffic stop, Officer Glass advised that he would impound the vehicle only if Defendant would not consent to a search. Stipulated Exhibit 1 at 11:47-13:48; *see also* N.T., 7/10/24, at 31 (Officer Glass testifying that he "explained to [Defendant] the two legal options[,] which would be either we do a consent search, or the vehicle would be impounded, and I'd apply for a search warrant."); *id.* at 38 (Officer Glass agreeing that he impounded Defendant's vehicle because Defendant refused to consent to a search); *id.* (Officer Glass agreeing that he "routinely" impounds vehicles before applying for search warrants where consent to search is denied); *id.* (Officer Glass testifying, "If it's for a controlled

substance, I always either get consent for the vehicle, or I impound the vehicle and apply for the search warrant."). After he called the tow truck, Officer Glass informed Defendant that if the anticipated search warrant execution yielded no contraband, Defendant could pick up his vehicle from impound later that afternoon. Stipulated Exhibit 1 at 20:41.

As the record does not support the Commonwealth's contention that Officer Glass prevented Defendant from driving the vehicle due to suspicion of DUI, we need not address the Commonwealth's argument that such a scenario would be tantamount to an arrest.[7]

Further, the Commonwealth does not argue that any exigent circumstances permitted the warrantless seizure of Defendant's vehicle. The Commonwealth does not attempt to characterize as exigent circumstances (1) the alleged safety concerns surrounding the vehicle's location; (2) Defendant's alleged intoxication resulting in the effective abandonment of the vehicle; or (3) the possibility that Defendant could drive away with the vehicle and discard any contraband. Indeed, the Commonwealth's brief does not acknowledge that Pennsylvania law requires the warrantless seizure of a vehicle to be supported by probable cause **and exigent circumstances**. *See generally*

---

[7] Though the Commonwealth's argument challenges the suppression court's determination that *Holzer* requires an arrest to support a warrantless seizure, *see* Memorandum Opinion, 2/18/25, at 4-5 (quoting *Holzer*, 389 A.2d at 106), the Commonwealth's brief does not cite or discuss *Holzer*. *See generally* Commonwealth Brief.

Commonwealth Brief; *see also Alexander*, 243 A.3d at 207; *Joseph*, 34 A.3d at 860. The suppression court recognized this requirement, and correctly applied it to Defendant's suppression motion. *See* Rule 1925(a) Opinion, 6/6/25, at 2, 6.

For the above reasons, we are constrained to agree with the suppression court's determination that Officer Glass's warrantless seizure of Defendant's vehicle was unlawful. Accordingly, the Commonwealth's first two sub-issues merit no relief.

In its third sub-issue, the Commonwealth argues that even if Officer Glass's seizure of Defendant's vehicle was improper, the evidence obtained via the subsequent search warrant need not be suppressed, pursuant to the independent source doctrine. Commonwealth Brief at 18-20. Relying on *Floyd*, the Commonwealth maintains the search was independent of the seizure because the information Officer Glass included in his search warrant application was known to him before Defendant's vehicle was towed. *Id.* at 19-20.[8]

_____

[8] The Commonwealth's formulation of its third sub-issue, in its statement of the question presented, identifies both the independent source doctrine and the inevitable discovery rule. Commonwealth Brief at 4. However, the Commonwealth's argument does not discuss the inevitable discovery rule, but rather relies solely on the independent source doctrine. *See id.* at 18-20.

This Court has observed "that the 'inevitable discovery rule' and the 'independent source rule,'" though "often conflated," are "actually are distinct
*(Footnote Continued Next Page)*

Defendant distinguishes *Floyd*, arguing that police arrested Floyd before lawfully impounding his vehicle, whereas Defendant was not arrested and his vehicle was unlawfully impounded. Defendant's Brief at 15 (citing *Floyd*, 313 A.3d 1061). Defendant maintains the instant search warrant was a direct result of the unlawful seizure of his vehicle. *Id.* at 15-16.

This Court has previously explained,

> [t]he independent source rule derives from the very nature of the exclusionary rule…. The exclusionary rule provides that evidence obtained due to an unconstitutional search or seizure cannot be used against a defendant. *See Weeks v. United States*, 232 U.S. 383 (1914). The exclusionary rule also applies to any evidence discovered as a result of the original illegal police conduct; such evidence is termed "fruit of the poisonous tree." *Nardone v. United States*, 308 U.S. 338, 341 (1939).
>
> In *Wong Sun v. United States*, 371 U.S. 471 (1963), the Supreme Court re-affirmed the basic principle that evidence derived from unconstitutional police conduct must be suppressed.
>
> > In order to make effective the fundamental constitutional guarantees of sanctity of the home and

doctrines." *Commonwealth v. Williams*, 2 A.3d 611, 618 (Pa. Super. 2011) (*en banc*).

> [U]nder the independent source doctrine, evidence that was **in fact** discovered lawfully, and not as a direct or indirect result of illegal activity, is admissible. In contrast, the inevitable discovery doctrine … permits the introduction of evidence that **inevitably would have** been discovered through lawful means, although the search that actually led to the discovery of the evidence was unlawful. The independent source and inevitable discovery doctrines thus differ in that the former focuses on what actually happened and the latter considers what would have happened in the absence of the initial search.

*Id.* at 618-19 (quoting *United States v. Herrold*, 962 F.2d 1131, 1141 (3rd Cir.) (emphasis in original)).

> inviolability of the person, ***Boyd v. United States***, 116 U.S. 616 (1886), this Court held nearly half a century ago that evidence seized during an unlawful search could not constitute proof against the victim of the search. ***Weeks***, 232 U.S. 383. The exclusionary prohibition extends as well to the indirect as the direct products of such invasions. ***Silverthorne Lumber Co. v. United States***, 251 U.S. 385 (1920).

***Wong Sun***, 371 at 484-85. Thus, the "exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion." ***Id.*** at 485. In extending the rule to verbal evidence, the ***Wong Sun*** Court again referred to all evidence derived from unconstitutional police conduct as fruits of the poisonous tree, which cannot be used against a defendant.

The ***Wong Sun*** Court continued that the exclusionary rule does not prevent the introduction of evidence that is "gained from an independent source," but rather applies only to "knowledge gained by the Government's own wrong." ***Id.*** at 485 (quoting ***Silverthorne Lumber Co.***, 251 U.S. at 392). The Supreme Court in ***Wong Sun*** noted that evidence is admissible if the "connection between the lawless conduct of the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint." ***Id.*** at 487 (quotation marks and citation omitted). The Supreme Court ruled: "We need not hold that all evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." ***Id.*** at 487-88 (quotation marks and citation omitted). Thus, where evidence was obtained through constitutional police action unconnected with the illegal police conduct, it is "purged" of "taint" based upon its derivation from an independent source.

***Williams***, 2 A.3d at 619.

In ***Floyd***, police observed Floyd engage in multiple hand-to-hand drug transactions in a Philadelphia business district, entering and exiting his vehicle

before and after each transaction. *Floyd*, 313 A.3d at 1063. Police conducted a traffic stop of Floyd's vehicle, and arrested him based on the observed drug transactions. *Id.* at 1064. Police took Floyd's keys and listed his vehicle on a police property receipt. *Id.* An officer then entered the vehicle and drove it to a police impound facility. *Id.* Police successfully applied for a search warrant, and a search of the vehicle yielded contraband. *Id.*

The trial court granted Floyd's suppression motion "because of [the officer's] warrantless entry of the vehicle" for the purpose of driving it to the impound. *Id.* The Commonwealth appealed, and this Court reversed. We determined the police lawfully arrested Floyd and had lawful authority to seize and impound his vehicle pursuant to section 3352(c)(3). *Id.* at 1065-68; *see also* 75 Pa.C.S.A. § 3352(c)(3) (permitting removal of a vehicle where police arrest the driver for an offense "for which the officer is required by law to take the person arrested before an issuing authority without unnecessary delay."). Applying the independent source doctrine, the *Floyd* Court determined the particular manner of the seizure—with an officer entering the vehicle and driving it to the impound rather than having it towed—did not taint the search warrant, as the information supporting the warrant application was gathered before the officer entered the vehicle and drove it to the impound facility. *Floyd*, 313 A.3d at 1068-70.

Instantly, the suppression court rejected the Commonwealth's independent source argument. The court determined that "*Floyd* is

distinguishable from the instant case[,] in that police arrested Floyd before transporting his vehicle." Rule 1925(a) Opinion, 6/6/25, at 6. The court further noted that the **Floyd** Court "found that police had the authority to remove [Floyd's] vehicle under the caretaking functions" set forth in section 3352(c)(3). **Id.**

We agree with the suppression court that **Floyd** lends no support to the Commonwealth's independent source argument.[9] As discussed above, police did not arrest Defendant and lacked authority to seize and impound his vehicle. The seizure itself, rather than the particular manner of the seizure, was unlawful. We therefore disagree with the Commonwealth's contention that the search warrant did not directly or indirectly result from the seizure. Even if the information supporting the warrant application was gathered before the seizure,[10] police could not have conducted the search without the seizure, as Defendant was otherwise free to drive away in the vehicle.

_____

[9] The Commonwealth cites no other authorities in support of its independent source argument. **See** Commonwealth Brief at 18-20.

[10] Defendant argues that the search warrant was tainted not only by the unlawful seizure of his vehicle, but also by the unlawful search of his person, which yielded the second cell phone and $1,000 in cash. Defendant's Brief at 15-17. In connection with its broader probable cause argument, the Commonwealth argues the Affidavit of Probable Cause's references to the second cell phone and cash can be severed, and the search warrant can be upheld based on the Affidavit's remaining averments. Commonwealth Brief at 13-14. As set forth above, we do not reach the broader probable cause question. **See** n.5, **supra**. Similarly, as we base our independent source disposition on the vehicle seizure alone, we do not reach the severance
*(Footnote Continued Next Page)*

The Commonwealth's argument that the instant search was untainted by the seizure is particularly unpersuasive in light of Officer Glass's testimony that he "routinely" impounds vehicles when motorists refuse to consent to searches. N.T., 7/10/24, at 38. To not apply the exclusionary rule here would be to license an end-run around the exigent circumstances requirement, perpetuating a routine of warrantless seizures and enabling police to enjoy the fruits of those seizures with impunity. Another troubling aspect of this routine is the false choice put to motorists like Defendant—wherein they are asked to either consent to a search or suffer the impounding of their vehicle— a choice that operates as an improper lever to coerce consent. **See id.** at 31, 38; **see also** Stipulated Exhibit 1 at 12:27 (Officer Glass advising that if Defendant did not consent to a search, he would have to pay towing and impound fees to get his vehicle back).

For these reasons, we agree with the suppression court's determination that the independent source doctrine cannot save the fruits of the instant vehicular search from suppression. Accordingly, the Commonwealth's third

---

question as to any taint arising from the unlawful search yielding the second cell phone and cash. However, we observe that although this search occurred before the vehicle was actually towed, it occurred after Officer Glass seized the vehicle and called the tow truck. **See** N.T., 7/10/24, at 44-45, 51. Thus, though not essential to our disposition of this issue, we note that some of the information in the Affidavit was obtained after Officer Glass seized Defendant's vehicle.

sub-issue merits no relief.  We therefore affirm the suppression court's order granting Defendant's suppression motion.

Order affirmed.


Judgment Entered.


_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/23/2025